SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| SUSAN GIPSON, individually and as surviving parent of NATHAN KIM FOLLOWILL, deceased, <br><br>        Plaintiff/Appellant, <br><br>        v. <br><br>LARRY KASEY and JANE DOE KASEY, a married couple, <br><br>        Defendants/Appellees. | ) Arizona Supreme Court <br>) No. CV-06-0100-PR <br>) <br>) Court of Appeals <br>) Division One <br>) No. 1 CA-CV 05-0119 <br>) <br>) Maricopa County <br>) Superior Court <br>) No. CV 2004-000550 <br>) <br>) <br>) **O P I N I O N** <br>) <br>) |

Appeal from the Superior Court in Maricopa County
The Honorable Jonathan H. Schwartz, Judge

**REMANDED**

_____

Opinion of the Court of Appeals, Division One
212 Ariz. 235, 129 P.3d 957 (2006)

**VACATED IN PART**

_____

JAMES F. BROOK AND ASSOCIATES                        Scottsdale
    By   James F. Brook
         John N. Vingelli
Attorneys for Susan Gipson

CAVANAGH LAW FIRM                                 Phoenix
    By   R. Corey Hill
         Ginette M. Hill
         Christopher Robbins
Attorneys for Larry Kasey and Jane Doe Kasey

LAW OFFICE OF JOJENE MILLS, P.C.                    Tucson
    By   JoJene E. Mills

And

ADELMAN GERMAN, P.L.C.                                    Scottsdale
     By   Daniel J. Adelman
Attorneys for Amicus Curiae Arizona Trial Lawyers Association
_____

**B A L E S**, Justice

¶1      The issue presented is whether persons who are prescribed drugs owe a duty of care, making them potentially liable for negligence, when they improperly give their drugs to others.  We conclude that such a duty is owed.

FACTS AND PROCEDURAL BACKGROUND

¶2      Because we are reviewing a decision granting summary judgment in favor of Larry Kasey, we describe the facts, some of which are disputed, in the light most favorable to Susan Gipson, the non-moving party.  *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309-10, 802 P.2d 1000, 1008-09 (1990).

¶3      Kasey attended an employee holiday party hosted by the restaurant where he worked.  Also present were his co-worker, Nathan Followill, and Followill's girlfriend, Sandy Watters.  The restaurant provided beer for the guests.  Kasey brought whiskey to the party and he gave shots to others present, including Followill, who was twenty-one years old.  Kasey also brought pain pills containing oxycodone, a narcotic drug, which he had been prescribed for back pain.  On prior occasions, Kasey had given pain pills to other co-workers for their recreational use.

¶4       During the party, Watters asked Kasey for one of his pain pills.   Kasey gave Watters eight pills, noting that they were of two different strengths, but not identifying them by name.   Although Kasey knew that combining the pills with alcohol or taking more than the prescribed dosage could have dangerous side effects, including death, he did not tell Watters this information.

¶5       When Kasey gave the pills to Watters, he knew that she was dating Followill.   Kasey also knew that Followill was interested in taking prescription drugs for recreational purposes because Followill had on prior occasions asked Kasey for some of his pills, but Kasey had refused because he thought Followill was "too stupid and immature to take drugs like that."

¶6       Shortly after she obtained the pills from Kasey, Watters told Followill she had them, and Followill took the pills from her.   As the night progressed, Followill became increasingly intoxicated.   Around 1:00 a.m., Watters and Followill left the party.   The next morning, Watters awoke to find that Followill had died in his sleep.   The cause of death was the combined toxicity of alcohol and oxycodone.

¶7       Gipson, Followill's mother, filed a wrongful death action against Kasey.   The superior court granted summary judgment for Kasey, finding that he owed Followill no duty of care and that Kasey's conduct had not proximately caused

Followill's death because of the intervening acts of Watters and Followill.

¶8     The court of appeals reversed, holding that Kasey did owe Followill a duty of care and that disputed facts precluded summary judgment on the issue of proximate cause. *Gipson v. Kasey*, 212 Ariz. 235, 244 ¶ 37, 129 P.3d 957, 966 (App. 2006). We granted review only with regard to the issue of duty. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003).

## DISCUSSION

¶9     To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) (citing William L. Prosser, *Handbook of the Law of Torts* § 30, at 143 (4th ed. 1971)). The first element, whether a duty exists, is a matter of law for the court to decide. *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). The other elements, including breach and causation, are factual issues usually decided by the jury. *See id.* at 358,

4

706 P.2d at 370.[1]

¶10    The existence of a duty of care is a distinct issue from whether the standard of care has been met in a particular case.  As a legal matter, the issue of duty involves generalizations about categories of cases.  Duty is defined as an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm."  *Id*. at 354, 706 P.2d at 366 (citing *Ontiveros*, 136 Ariz. at 504, 667 P.2d at 204).  The standard of care is defined as "[w]hat the defendant must do, or must not do . . . to satisfy the duty." *Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed. 1984)).  Whether the defendant has met the standard of care - that is, whether there has been a breach of duty - is an issue of fact that turns on the specifics of the individual case.

¶11    Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained.  *Markowitz*, 146 Ariz. at 354,

---

[1]    Although breach and causation are factual matters, summary judgment may be appropriate if no reasonable juror could conclude that the standard of care was breached or that the damages were proximately caused by the defendant's conduct.  *See Markowitz,* 146 Ariz. at 357-58, 706 P.2d at 369-70; *Coburn v. City of Tucson*, 143 Ariz. 50, 53, 691 P.2d 1078, 1081 (1984).

5

706 P.2d at 366.  Thus, a conclusion that no duty exists is equivalent to a rule that, for certain categories of cases, defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct.  *See id.* at 356, 706 P.2d at 368.[2]

¶12      In this case, the court of appeals held that Kasey owed Followill a duty of care,

> based on the totality of the circumstances as reflected in the following factors: (1) the relationship that existed between Kasey and Followill, (2) the foreseeability of harm to a foreseeable victim as a result of Kasey giving eight pills to Watters, and (3) the presence of statutes making it unlawful to furnish one's prescription drugs to another person not covered by the prescription.

*Gipson*, 212 Ariz. at 238-39 ¶ 15, 129 P.3d at 960-61.

¶13      Kasey argues that none of these factors support a finding that he owed a duty of care to Followill.  Although we disagree with aspects of the analysis of the court of appeals, that court correctly concluded that Kasey owed a duty of care.

## A. Foreseeability

¶14      Kasey argues that the court of appeals erred by relying on foreseeability of harm because this Court held in *Martinez v. Woodmar IV Condominiums Homeowners Ass'n, Inc*. that foreseeability should no longer be a factor in determining

---

[2]      Intentional torts, in contrast, do not require proof of a predicate duty of care.  *See Wells Fargo Bank v. Ariz. Laborers*, *Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 483-84 ¶ 20, 38 P.3d 12, 21-22 (2002).

6

whether a duty exists. 189 Ariz. 206, 211, 941 P.2d 218, 223 (1997). Gipson, on the other hand, argues that our prior cases have relied on foreseeability in determining whether a duty is owed. *See, e.g.*, *Donnelley Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984) ("Duty and liability are only imposed where both the plaintiff and the risk are foreseeable to a reasonable person.").

¶15    We acknowledge that our case law has created "some confusion and lack of clarity . . . as to what extent, if any, foreseeability issues bear on the initial legal determination of duty." *Riddle v. Ariz. Oncology Servs., Inc*., 186 Ariz. 464, 466 n.3, 924 P.2d 468, 470 n.3 (App. 1996). To clarify, we now expressly hold that foreseeability is not a factor to be considered by courts when making determinations of duty, and we reject any contrary suggestion in prior opinions.

¶16    Whether an injury to a particular plaintiff was foreseeable by a particular defendant necessarily involves an inquiry into the specific facts of an individual case. *See* W. Jonathan Cardi, *Purging Foreseeability: The New Version of Duty and Judicial Power in the Proposed Restatement (Third) of Torts*, 58 Vand. L. Rev. 739, 801 (2005). Moreover, foreseeability often determines whether a defendant acted reasonably under the circumstances or proximately caused injury to a particular plaintiff. Such factual inquiries are reserved for the jury.

The jury's fact-finding role could be undermined if courts assess foreseeability in determining the existence of duty as a threshold legal issue. *See id*. at 741. Reliance by courts on notions of "foreseeability" also may obscure the factors that actually guide courts in recognizing duties for purposes of negligence liability. *Id*.

¶17 Foreseeability, as this Court noted in *Martinez*, is more properly applied to the factual determinations of breach and causation than to the legal determination of duty. 189 Ariz. at 211, 941 P.2d at 223 ("[F]oreseeable danger [does] not dictate the existence of duty but only the nature and extent of the conduct necessary to fulfill the duty."); *cf. Palsgraf v. Long Island R.R.*, 162 N.E. 99, 102 (N.Y. 1928) (Andrews, J., dissenting) (arguing that foreseeability does not determine duty but is a factor in determining proximate cause). We believe that such an approach desirably recognizes the jury's role as factfinder and requires courts to articulate clearly the reasons, other than foreseeability, that might support duty or no-duty determinations. *See* Restatement (Third) of Torts: Liability for Physical Harm § 7 cmt. j (Proposed Final Draft No. 1, 2005) ("Third Restatement") (rejecting foreseeability as a factor in determining duty).

## B. Relationship Between the Parties

¶18 Kasey also argues that he did not owe Followill a duty

of care because they had no "direct" or "special" relationship. Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant. *Stanley v. McCarver,* 208 Ariz. 219, 221 ¶ 7, 92 P.3d 849, 851 (2004). A special or direct relationship, however, is not essential in order for there to be a duty of care.[3]

¶19 Under Arizona common law, various categorical relationships can give rise to a duty. These include, but are not limited to, the landowner-invitee relationship, *Martinez,* 189 Ariz. at 212, 941 P.2d at 224; *Markowitz*, 146 Ariz. at 357, 706 P.2d at 369; *Coburn*, 143 Ariz. at 52, 691 P.2d at 1080, the tavern owner-patron relationship, *Brannigan v. Raybuck*, 136 Ariz. 513, 516, 667 P.2d 213, 216 (1983); *Ontiveros*, 136 Ariz. at 511, 667 P.2d at 211, and those "special relationships" recognized by § 315 of the Restatement (Second) of Torts (1965) that create a duty to control the actions of another, *Ontiveros*, 136 Ariz. at 508-09, 667 P.2d at 208-09. None of these

---

[3] That particular "relationships" may provide the basis for a duty of care reflects the historical evolution of the common law, which before the nineteenth century recognized fault-based liability in "actions on the Case" between parties having relationships to each other by contract or status. 1 Dan B. Dobbs, *The Law of Torts* § 111, at 259-63 (2001). As the common law evolved during the nineteenth century, courts extended the scope of negligence actions by recognizing a more general duty of care applicable to suits among strangers, like those involved in railway crossing accidents. *Id.* § 112, at 265-66. Relationships, however, have continued to provide a basis for identifying and defining duties of care. *Id.* § 113, at 266.

relationships existed between Followill and Kasey.

¶20       Although a duty of care may result from the nature of the relationship between the parties, we decline to recognize such a duty here based on the particular facts (some of which are disputed) of the relationship between Kasey and Followill. In identifying this relationship as a factor supporting a finding of duty, the court of appeals noted that "[t]hey were co-workers and friends; they had socialized previously; [and] Followill had asked Kasey for pills in the past."  *Gipson*, 212 Ariz. at 239 ¶ 16, 129 P.3d at 961.

¶21       A fact-specific analysis of the relationship between the parties is a problematic basis for determining if a duty of care exists.  The issue of duty is not a factual matter; it is a legal matter to be determined *before* the case-specific facts are considered.  *Markowitz*, 146 Ariz. at 354, 706 P.2d at 366; *see* 1 Dan B. Dobbs, *The Law of Torts* § 226, at 577 (2001) ("The most coherent way of using the term duty states a rule of law rather than an analysis of the facts of particular cases.").  Accordingly, this Court has cautioned against narrowly defining duties of care in terms of the parties' actions in particular cases.  "[A]n attempt to equate the concept of 'duty' with such specific details of conduct is unwise," because a fact-specific discussion of duty conflates the issue with the concepts of breach and causation.  *Coburn*, 143 Ariz. at 52, 691 P.2d at

10

1080; *see also Markowitz*, 146 Ariz. at 355, 706 P.2d at 367 (noting that "the existence of a duty is not to be confused with details of the standard of conduct"). Thus, the court of appeals erred in focusing on the facts of the particular relationship between Kasey and Followill in determining if a duty exists.

¶22     A finding of duty, however, does not necessarily depend on a preexisting or direct relationship between the parties. As we explained in *Stanley*, "[t]he requirement of a formalized relationship between the parties has been quietly eroding . . . and, when public policy has supported the existence of a legal obligation, courts have imposed duties for the protection of persons with whom no preexisting 'relationship' existed." 208 Ariz. at 221-22 ¶ 8, 92 P.3d at 851-52 (internal citations omitted).

## C. Public Policy

¶23     Having rejected foreseeability as a factor in the duty analysis and declining to recognize a duty based on the particular relationship between the parties, we turn to public policy considerations. Public policy may support the recognition of a duty of care. *See id.* at 223 ¶ 14, 92 P.3d at 853 ("We conclude that public policy is better served by imposing a duty in such circumstances to help prevent future harm, even in the absence of a traditional doctor-patient

11

relationship.").

¶24    Kasey argues that recognizing a duty here would imply that all people owe a duty of care to all others at all times, a proposition he contends was rejected in *Wertheim v. Pima County*, 211 Ariz. 422, 426 ¶ 17, 122 P.3d 1, 5 (App. 2005) ("We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances." (quoting *Hafner v. Beck*, 185 Ariz. 389, 391, 916 P.2d 1105, 1107 (App. 1995))), and *Bloxham v. Glock Inc.*, 203 Ariz. 271, 275 ¶ 8, 53 P.3d 196, 200 (App. 2002) (same).  It is not necessary, however, to frame the issue this broadly to recognize a duty on the part of Kasey.  Instead, in this case, Arizona statutes themselves provide a sufficient basis for a duty of care.[4]

¶25    It is well settled that "[t]he existence of a statute

---

[4]    This Court has, however, previously noted that "every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others."  *Ontiveros*, 136 Ariz. at 509, 667 P.2d at 209 (internal citations omitted). Similarly, § 7 of the proposed Third Restatement recognizes that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Based on such statements, one could conclude that people generally "owe a duty to exercise reasonable care to avoid causing physical harm" to others, subject to exceptions that eliminate or modify this duty for reasons of policy, such as the social host rule. *See id*. § 7 & cmt. a; *accord* Dobbs, *supra*, § 227, at 578.  Because we find a duty based on Arizona statutes, we need not decide if a duty would exist independently as a matter of common law.  Nor need we resolve whatever tension may exist between language in cases such as *Wertheim* and *Bloxham* and the concepts of duty suggested by *Ontiveros* or the draft Third Restatement.

12

criminalizing conduct is one aspect of Arizona law supporting the recognition of [a] duty." *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994). Not all criminal statutes, however, create duties in tort. A criminal statute will "establish a tort duty [only] if the statute is 'designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation . . . .'" *Id.* (citing Keeton et al., *supra*, § 36, at 229-30).

**¶26** Several Arizona statutes prohibit the distribution of prescription drugs to persons lacking a valid prescription. *See, e.g.*, A.R.S. § 36-2531(A)(6) (2003); *id.* § 32-1961(A) (2002); *id.* § 13-3408(A)(5) (2001). As the court of appeals recognized, "[t]hese statutes are designed to avoid injury or death to people who have not been prescribed prescription drugs, who may have no medical need for them and may in fact be endangered by them, and who have not been properly instructed on their usage, potency, and possible dangers." *Gipson*, 212 Ariz. at 241 ¶ 24, 129 P.3d at 963. Because Followill is within the class of persons to be protected by the statute and the harm that occurred here is the risk that the statute sought to protect against, these statutes create a tort duty.

**¶27** Kasey argues that because the legislature did not

13

create a civil duty for a violation of these criminal statutes, a duty does not exist. But this notion was rejected in *Ontiveros*: "[A] duty of care and the attendant standard of conduct may be found in a statute silent on the issue of civil liability." 136 Ariz. at 510, 667 P.2d at 210 (internal citations omitted).

¶28 Kasey also contends that because Arizona law does not impose a duty on social hosts who serve alcohol to adults, there should similarly be no duty here. We disagree. Through A.R.S. § 4-301 (2002), the legislature specifically exempted social hosts from liability for harm caused by a consumer of legal drinking age. No similar statute exempts those who improperly give their prescription drugs to others. *Cf. Hernandez*, 177 Ariz. at 252, 256, 866 P.2d at 1338, 1342 (holding that A.R.S. § 4-301 does not preclude recognition of a duty of care to avoid serving alcohol to minors).

¶29 Moreover, the reasoning behind the social host no-duty rule does not apply in this context. When a court or legislature adopts a no-duty rule, it generally does so based on concerns that potential liability would chill socially desirable conduct or otherwise have adverse effects. The no-duty rule for social hosts is a prime example. Holding social hosts liable for harm caused by guests to whom they serve alcohol might curb desirable social exchanges. *See, e.g.*, *Keckonen v. Robles*, 146

14

Ariz. 268, 272, 705 P.2d 945, 949 (App. 1985) (holding, for policy reasons, that social host owed no duty to person injured by intoxicated guest). In contrast, no recognized social benefit flows from the illegal distribution of prescription drugs. *Cf. Stanley*, 208 Ariz. at 223 ¶ 14, 92 P.3d at 853 (observing, in holding that radiologist owed duty of care to examinee despite absence of formal doctor-patient relationship, that there was no apparent public benefit from a no-duty rule).

¶30        Kasey additionally argues that because his act of providing pills to Watters was not sufficient by itself to cause harm to Followill, no duty was owed. We reject the suggestion that no duty can exist if the plaintiff's conduct contributed to his injury. *See Hernandez*, 177 Ariz. at 255, 866 P.2d at 1341 ("Nor are considerations of proximate causation a reason to conclude there is no liability as a matter of law in all cases."). Whether the plaintiff's conduct constituted an intervening (or even a superseding) cause of the harm suffered is a question of fact and does not determine whether a duty exists. *See id.; Pratt v. Daly*, 55 Ariz. 535, 104 P.2d 147 (1940) (finding defendants who provided alcohol to plaintiff's husband, a known alcoholic, liable for loss of consortium to plaintiff).

¶31        Alternatively, Kasey argues that this Court should adopt a no-duty rule precluding recovery on the grounds that a

15

person who voluntarily becomes intoxicated and thereby sustains an injury should not be able to recover from the person supplying the intoxicants. We reject this reasoning. Followill's own actions may reduce recovery under comparative fault principles or preclude recovery if deemed a superseding cause of the harm, but those are determinations to be made by the factfinder. For the reasons stated, neither our case law nor considerations of policy justify a blanket no-duty rule that would insulate persons who improperly distribute prescription drugs from tort liability.

**CONCLUSION**

¶32     We hold that Kasey did owe a duty of care based on Arizona's statutes prohibiting the distribution of prescription drugs to persons not covered by the prescription. Accordingly, we vacate the part of the opinion of the court of appeals that addresses the issue of duty and remand to the superior court for further proceedings consistent with this opinion.


                     _____
                     W. Scott Bales, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


16

_____

Rebecca White Berch, Vice Chief Justice


_____

Michael D. Ryan, Justice


_____

Andrew D. Hurwitz, Justice


**H U R W I T Z**, Justice, concurring

¶**33**      The Court correctly applies our precedents in determining that Kasey owed Followill a duty of care.  I write briefly to suggest that our analysis of duty might be aided in the future by adopting a different conceptual approach.

¶**34**      The Court's analysis today and in our prior cases largely centers on determining whether we should *impose* a duty on the particular defendant before us.  But, as the Court notes, Op. ¶ 24 n.4, under the common law "every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others."  *Ontiveros v. Borak*, 136 Ariz. 500, 509, 667 P.2d 200, 209 (1983).  Or as the proposed Third Restatement of Torts puts the matter, "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm."  *See* Restatement (Third) of Torts: Liability for Physical Harm § 7(a) (Proposed Final Draft No. 1, 2005) [hereinafter "Third Restatement"].

17

¶35     It thus would seem to make sense for courts to view the duty of reasonable care as the norm, and depart from that norm only in those cases where public policy justifies an exception to the general rule.  *See id.* § 7(b) ("In exceptional cases, when . . . policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification."); 1 Dan B. Dobbs, *The Law of Torts* § 227, at 579 (2001) ("[N]o-duty rules should be invoked only when all cases they cover fall substantially within the policy that frees the defendant of liability."); *see also Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 469 (2d Cir. 1995) (Calabresi, J.) ("[T]he judicial power to modify the general [duty] rule . . . is reserved for very limited situations.") (applying New York law).

¶36     A judicial finding that a defendant owes no duty to a plaintiff means that even if the defendant's actions were unreasonable and proximately caused harm to the plaintiff, the plaintiff has no recourse.  Such a result should obtain, it seems to me, only when there is a good reason for doing so, and

courts finding no duty as a matter of law should be required clearly to identify that reason.[5]

¶37     The exemption from liability for social hosts is a good example of a policy-based duty exception.  Courts have imposed only limited duties of care upon social hosts serving alcohol because of "staggering" economic and social consequences from adhering to the general rule of reasonable care.  *See Keckonen v. Robles*, 146 Ariz. 268, 272, 705 P.2d 945, 949 (App. 1985).

¶38     If the analytic framework suggested by the Third Restatement were applied here, the only issue would be whether there existed a good policy reason to exempt those who distribute prescription drugs to unauthorized users from the general duty of care.  As the Court correctly concludes, there is none.  Op. ¶¶ 23-31.  Thus, adoption of the Third Restatement approach would not alter the result we reach today.

¶39     My tentative sense, however, is that the Third Restatement rubric would simplify our analytical task in future cases and remove some understandable confusion among the bar and lower courts on the duty issue.  For example, we have previously stated that the issue of duty depends on "the relationship of the parties."  *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356,

---

[5]     In so doing, courts will aid the Legislature in making informed judgments as to whether the common law of duty should be statutorily modified in any particular class of cases.

19

706 P.2d 364, 368 (1985). The court of appeals in this case therefore felt constrained to determine whether the relationship between Kasey and Followill, who were co-workers and friends, was sufficient to impose a duty of reasonable care. *Gipson v. Kasey*, 212 Ariz. 235, 239 ¶ 16, 129 P.3d 957, 961 (App. 2006). But, as the Court correctly notes today, a duty of reasonable care is often found even when the parties have no prior relationship at all – in automobile accident cases, for instance. Op. ¶ 18 & n.3; *see also Stanley v. McCarver*, 208 Ariz. 219, 221-22 ¶ 8, 92 P.3d 849, 851-52 (2004) (noting that "courts have imposed duties for the protection of persons with whom no preexisting 'relationship' existed").

¶**40**      Under the approach counseled by the Third Restatement, the relationship of the parties is relevant to duty only insofar as it may suggest policy reasons for modifying or eliminating the general duty of reasonable care. Thus, in order to avoid the imposition of excessive costs on possessors of land and to protect property rights, public policy dictates that the landowner's duty to a deliberate trespasser is limited to refraining from willful or wanton injurious conduct. *See, e.g., Barnhizer v. Paradise Valley Unified Sch. Dist. No. 69*, 123 Ariz. 253, 254, 599 P.2d 209, 210 (1979) (citing Restatement (Second) of Torts § 333 (1965)). And, in some cases in which there is no prior relationship between the parties, public

policy may support excusing the defendant from the general duty of reasonable care.  *Cf. McCarver*, 208 Ariz. at 225 ¶ 20, 92 P.3d at 855 (considering whether imposition of duty on physician to non-patient would "chill" doctors from doing pre-employment examinations).

**¶41**	Despite what appear to me to be the advantages of the Third Restatement approach to duty, the parties in this case have not urged its adoption.  We therefore have not had the benefit of argument by counsel or amici as to why such an approach would be preferable to our current jurisprudence.  Nor has the Third Restatement been finally adopted by the American Law Institute.  For those reasons, and because application of the Third Restatement would not in any event change the result today, I leave the issue for another day and concur in the opinion of the Court.

_____
Andrew D. Hurwitz, Justice