NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

TROY HABERL, et al., *Plaintiffs/Appellants*,

*v.*

MICHAEL L. MCALLISTER, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0407
FILED 12-3-2019

Appeal from the Superior Court in Maricopa County
Nos.  CV 2015-001741
CV 2015-002465
(Consolidated)
The Honorable Daniel G. Martin, Judge

**VACATED AND REMANDED**

COUNSEL

Burch & Cracchiolo PA, Phoenix
By Daryl Manhart, Jake D. Curtis
*Counsel for Plaintiff/Appellant*

The Hassett Law Firm PLC, Phoenix
By Myles P. Hassett, Jamie A. Glasser,
David R. Seidman
*Counsel for Defendant/Appellee McAllister*

Meagher & Greer PLLP, Scottsdale
By Kurt M. Zitzer, Spencer T. Proffitt
*Counsel for Defendant/Appellee Chapman*

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Counsel for Amicus Curiae, Arizona Association for Justice/Arizona Trial
Lawyers Association*

─────────────────────────────

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court,
in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

─────────────────────────────

**C A M P B E L L**, Judge:

¶1          Troy and Renee Haberl ("the Haberls") appeal from the
superior court's entry of summary judgment dismissing their legal
malpractice claim against Michael McAllister, et al. ("the Lawyers"). The
court found that there was no duty owed in the underlying negligence case,
and therefore the legal malpractice claim failed as a matter of law. We
disagree. "The existence of a duty of care is a distinct issue from whether
the standard of care has been met in a particular case." *Gipson v. Kasey*, 214
Ariz. 141, 143, ¶ 10 (2007). Because we find, as a matter of law, the existence
of a duty of care in the underlying case, we vacate the entry of summary
judgment and remand for proceedings consistent with this decision.

**BACKGROUND**

¶2          In 2001, the Haberls incorporated Haberl Enterprises, Inc.
("HEI"), a trucking company with a fleet of ten tractor trucks. Soon
thereafter, HEI entered an Independent Contractor Lease Agreement ("the
lease agreement") with the Schuster Company ("Schuster"), an Iowa
trucking company. Pursuant to the lease agreement, HEI agreed to haul
cargo for Schuster under Schuster's Department of Transportation ("DOT")
number, but it retained responsibility for maintenance and repairs of its
tractor trucks and was required to maintain its fleet in compliance with the

governing Federal Motor Carrier Safety Administration regulations ("the regulations").[1]

¶3        Although Schuster expressly disclaimed responsibility for the maintenance and repair of HEI's tractor trucks in the lease agreement, it separately offered maintenance and repair services to HEI through its wholly-owned, on-site subsidiary, Le Mars Truck & Trailer ("LMTT"), and HEI enrolled in LMTT's "maintenance program." While the maintenance agreement between HEI and LMTT was never reduced to a written contract, the parties verbally agreed that HEI's maintenance and repair costs would be deducted directly from its Schuster payments.

¶4        Because HEI was Schuster's largest independent contractor, it received certain accommodations. Most notably, Schuster permitted HEI to store its runout tires (tires that had some wear but could be reused) in an upstairs bay area located in the LMTT facility. Neither HEI nor LMTT kept an inventory of HEI's "tire pile," but LMTT's mechanics generally marked the tires as "Hab Ent," and when HEI's trucks needed replacement tires, LMTT's mechanics installed runout tires from the tire pile, if suitable.

¶5        On August 24, 2010, HEI purchased a new tire from Tire Den, Inc. to replace Unit No. 9052's left rear inside tire. When Unit No. 9052 returned to the LMTT facility on September 1, 2010, Mr. Haberl submitted a work order requesting that a LMTT mechanic remove the new tire and replace it with a "good runout" from the HEI tire pile.

¶6        In November 2010, Mr. Haberl drove Unit No. 9052 from Iowa to Arizona. When he reached Fountain Hills, Mr. Haberl noticed smoke from beneath the vehicle. Once he safely pulled over, he inspected the truck to determine the source of the smoke.  As he looked underneath, the left rear inside tire exploded. Given his proximity, Mr. Haberl sustained significant injuries.

¶7        The Haberls retained the Lawyers to investigate the cause of the tire malfunction and seek damages for Mr. Haberl's injuries. In December 2011, the Haberls filed an amended  complaint against Tire Den, Inc. and Northwest Tire Factory, LLC ("the defendants"), alleging they had installed an eight-year-old tire on Unit No. 9052 on August 24, 2010, having falsely represented that the tire was in "new" condition. Approximately two and one-half years later, however, the Lawyers learned that the tire at

---

[1]        The lease agreement also provided that any disputes arising under the contract would be governed by Iowa law.

issue was in fact a runout tire selected from HEI's tire pile and installed on Unit No. 9052 after Mr. Haberl submitted a work order requesting replacement. Having discovered that the complaint against the defendants was without any legal basis, the Lawyers moved to withdraw their representation, which the superior court granted, and the case was subsequently dismissed.

¶8 On the heels of that dismissal, the Haberls filed a legal malpractice claim against the Lawyers. They alleged the Lawyers failed to diligently pursue the Haberls' case and had they done so they would have discovered the error before the applicable statute of limitations period expired. Specifically, the Haberls asserted the Lawyers should have realized that LMTT had cognizable liability exposure for failing to independently evaluate the integrity (particularly the age) of the subject tire before installing it on Unit No. 9052. After nearly three years of discovery and protracted motion practice, the parties on summary judgment argued whether, as a matter of law, the Haberls could demonstrate the existence of a legal duty on the part of LMTT in the underlying case. The Lawyers asserted that LMTT owed no duty to the Haberls to ascertain the age of the runout tire and, therefore, the Haberls' legal malpractice claim failed as a matter of law. Alternatively, the Lawyers argued that even if LMTT owed such a duty, HEI was predominately at fault and, under controlling Iowa law, could not prevail on that basis either.

¶9 After taking the matter under advisement, the superior court entered a detailed ruling granting the Lawyers' motion for summary judgment. As a preliminary matter, the court found that Arizona and Iowa law are in accord on the issue of duty, and therefore it was unnecessary to resolve any choice of law dispute. Indeed, the court found that "under both Arizona and Iowa" law LMTT owed no duty to HEI "to assess and/or warn about the age of a tire owned by HEI and which HEI directed LMTT to install." Having found that the Haberls failed to establish the existence of a duty in the underlying case, the court concluded that their legal malpractice claim failed as a matter of law. The Haberls timely appealed.

## DISCUSSION

¶10 The Haberls contend that LMTT owed a legal duty to perform maintenance on HEI's tractor trucks, specifically tire installation, in a non-negligent manner. Contrary to the superior court's ruling, the Haberls also maintain that LMTT had an obligation to ascertain the age of the runout tire before installing it, but they argue *that* obligation relates *only* to the applicable standard of care, not the existence or absence of a duty.

4

**¶11**         In reviewing a grant of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). "We determine de novo whether any genuine issues of material fact exist and whether the [superior] court correctly applied the law." *Diaz v. Phoenix Lubrication Service, Inc.*, 224 Ariz. 335, 338 ¶ 10 (App. 2010); *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.").

**¶12**         For both their underlying negligence claim and their legal malpractice claim, the Haberls must prove the existence of a duty, breach of duty, actual and proximate causation, and damages. *Glaze v. Larsen*, 207 Ariz. 26, 29, ¶ 12 (2004).  Therefore, to prevail against the Lawyers, the Haberls must show that, but for their attorneys' negligence, they "would have been successful in the prosecution" of a claim or suit against LMTT. *Phillips v. Clancy*, 152 Ariz. 415, 418 (App. 1986).

**¶13**         Given the procedural posture of this case, the narrow issue before us is whether LMTT had a duty of care to inspect the replacement runout tire, evaluate its safety, and warn of any apparent danger. "The existence of a duty of care is a distinct issue from whether the standard of care has been met in a particular case." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 10 (2007).  While a duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm," "the standard of care—that is, whether there has been a breach of duty—is an issue of fact that turns on the specifics of the individual case." *Id*. (internal quotations omitted).

**¶14**         "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Id*. at 145, ¶ 18. A duty exists when "the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985). "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Gipson*, 214 Ariz. at 144, ¶ 11; *Quiroz v. ALCOA, Inc.*, 243 Ariz. 560, 578, ¶ 85 (2018). Absent a duty, "defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct." *Gipson*, 214 Ariz. at 143–44, ¶ 11. The existence of a duty is a question of law that we review de novo. *Quiroz*, 243 Ariz. at 564, ¶ 7.

¶15 The parties do not dispute that LMTT's service agreement with HEI was an oral understanding rather than a written contract. Likewise, the parties agree that HEI neither provided LMTT instructions regarding the storage of its runout tires nor requested that LMTT's mechanics specifically check the age of the runout tires before reinstalling them. Although two LMTT employees testified that Mr. Haberl had the opportunity to select which runout tires the mechanics installed, the testimony of another LMTT employee contradicted this claim, and Mr. Haberl consistently and unequivocally denied any control over the selection of runout replacements. Mr. Haberl testified that he deferred to and relied on the expertise of LMTT's certified mechanics to determine which tires to retain and which to discard. He stated that he lacked the knowledge and training necessary to properly install and maintain commercial tires. Mr. Haberl also denied that the runout tire came from his tire pile, explaining he did not buy or use that tire brand (Goodyear). Mrs. Haberl, however, acknowledged that HEI sometimes purchased Goodyear tires, albeit "very infrequently," and the record reflects that LMTT had installed another Goodyear tire on Unit No. 9052 in August 2010. Finally, the parties do not dispute that an LMTT mechanic inspected the runout tire before he installed it to ensure that it complied with the DOT regulations and that those regulations do not restrict the use of tires based on age.

¶16 In granting the Lawyers' motion for summary judgment, the superior court found *Diaz* both controlling and determinative. In *Diaz*, the plaintiff took his parents' car to a Jiffy Lube for an oil change. 224 Ariz. at 337, ¶ 2. While the service he purchased included a check of the vehicle's tire pressure, the plaintiff did not avail himself of Jiffy Lube's separate and optional tire rotation and inspection service and did not ask the technician to perform work on the tires or otherwise inspect their condition. *Id*. A few weeks after that oil change service, the plaintiff sustained serious injuries from a motor vehicle accident. *Id*. at ¶ 3. Asserting the accident was caused, at least in part, by the worn condition of the tread on the vehicle's rear tires, the plaintiff filed a lawsuit against Jiffy Lube, alleging the Jiffy Lube technician who changed the car's oil should have notified him of the tire wear. *Id*. at ¶¶ 3, 6–7. The superior court found that Jiffy Lube owed no legal duty to the plaintiff and this court affirmed on appeal, reasoning the "scope of Jiffy Lube's contractual undertaking" did not encompass tire inspection and "an expansion of Jiffy Lube's duty beyond the contractually agreed upon services" was not warranted. *Id*. at 339, ¶¶ 16–17, 19 ("[T]he relationship between Jiffy Lube and Plaintiffs did not create a duty of care beyond Jiffy Lube's actual undertaking.").

**¶17** On this record, we conclude the facts in *Diaz* are distinguishable, and its rationale supports, rather than negates, the existence of a duty in this case. Unlike the defendant in *Diaz*, LMTT's undertaking was quite broad—the maintenance and repair of HEI's entire fleet of tractor trucks. More importantly, LMTT, admittedly, undertook the specific task of inspecting HEI's tires, ensuring there were no visible defects and sufficient tread depth before installation. While *Diaz* involved a single, limited maintenance service, in this case, LMTT provided comprehensive maintenance and repair services for HEI on an ongoing basis, including tire installation and storage of tires and had done so for years by the time it installed the runout tire at issue. Given these facts, LMTT's contractual undertaking encompassed tire inspection and it therefore owed a duty of care to ensure that it installed a safe tire in a non-negligent manner.

**¶18** Although the Lawyers contend that LMTT's maintenance inspection satisfied industry standards, noting the regulations do not restrict the age of tires, this argument relates to the applicable standard of care and whether LMTT committed a breach, not the existence of a duty. Stated differently, because LMTT inspected HEI's tires, it owed a duty of care to perform that task in a non-negligent manner. Any issue regarding the precise manner of inspection required pertains to the appropriate standard of care, not duty. To the extent the Lawyers argue otherwise, the lease agreement defined HEI's maintenance obligations to Schuster; it did not limit the scope of LMTT's maintenance obligations to HEI. As our supreme court has made clear, the existence of a duty of care "is a distinct issue" from the applicable standard of care. *Gipson*, 214 Ariz. at 143, ¶ 10. While the existence of a duty is a question of law for the court, issues regarding the standard of care and breach fall within the purview of a factfinder. *Id.*

**¶19** Because LMTT owed a duty of care to HEI as a matter of law on the underlying case, the Lawyers failed to show at this stage of the proceedings that they are entitled to judgment as a matter of law on the Haberls' legal malpractice claim. Accordingly, the entry of summary judgment in the Lawyers' favor was improper.[2]

---

[2] As a secondary matter, we vacate the findings of fact set forth in the superior court's minute entry ruling granting the Lawyers' motion for summary judgment. Although these factual findings were not set forth in the court's final judgment, they were implicitly incorporated therein. We decline the Lawyers' invitations to conduct a comparative fault analysis in

## CONCLUSION

¶20  For the foregoing reasons, we vacate the entry of summary judgment in favor of the Lawyers and remand for proceedings consistent with this decision. As the successful parties on appeal, we award the Haberls their costs, conditioned upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

the underlying case and assess causation in the legal malpractice case. Instead, we leave to the superior court to consider, in the first instance, these arguments.