IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**CVS PHARMACY, INC., AND CVS ARIZONA, L.L.C.,**
*Petitioners,*

*v.*

**THE HONORABLE JANET C. BOSTWICK, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA,**
*Respondent Judge,*

*and*

**TUCSON MEDICAL CENTER,**
*Real Party in Interest.*

————————

No. CV-20-0120-PR
Filed September 1, 2021

————————

Appeal from the Superior Court in Pima County
The Honorable Janet C. Bostwick, Judge
No. C20184991
**REVERSED AND REMANDED**

Order of the Court of Appeals, Division Two
No. CA-SA 2020-0012
Filed April 14, 2020

————————

COUNSEL:

Andrew M. Federhar, Jessica A. Gale, Spencer Fane LLP, Phoenix, and Conor B. O'Croinin (argued), Zuckerman Spaeder LLP, Baltimore, MD, Attorneys for CVS Pharmacy, Inc. and CVS Arizona, L.L.C.

Ronald Jay Cohen, Daniel G. Dowd (argued), Betsy J. Lamm, Lauren M. LaPrade, Cohen Dowd Quigley, P.C., Phoenix; Lance Oliver, Motley Rice LLC, Mount Pleasant, SC; Steven C. Mitchell, Samuel F. Mitchell, Mitchell & Speights, L.L.C, Scottsdale, Attorneys for Tucson Medical Center

Jeffrey C. Warren, Amanda Heitz, David T. Lundmark, Claudia C. Ionescu, Charles M. Seby, Bowman and Brooke LLP, Phoenix, Attorneys for Amicus Curiae Arizona Association of Defense Counsel

Troy P. Foster, Megan Weides, The Foster Group, PLLC, Phoenix; Chad Golder, Esq. Washington, DC, Attorneys for Amici Curiae American Hospital Association, Federation of American Hospitals and America's Essential Hospitals

Eric M. Fraser, Hayleigh S. Crawford, Osborn Maledon, P.A., Phoenix, Attorneys for Amici Curiae Kingman Hospital, Inc., Arizona Spine and Joint Hospital LLC, Bullhead City Hospital Corporation, Carondelet St. Joseph's Hospital, Holy Cross Hospital, Inc., Hospital Development of West Phoenix, Inc., Northwest Hospital, LLC, Oasis Hospital, Oro Valley Hospital, LLC, Orthopedic and Surgical Specialty Company, LLC, St. Mary's Hospital of Tucson, VHS Acquisition Subsidiary Number 1, Inc., VHS of Arrowhead, Inc., and Yuma Regional Medical Center

Timothy A. Nelson, The Nelson Law Group, PLLC, Phoenix, Attorney for Amicus Curiae Arizona Hospital and Healthcare Association

Daniel J. O'Connor, Jr., Richard R. Reed, Jr., O'Connor & Dyet, P.C., Tempe; A. Joshua Podoll and Danielle Sochaczevski, Williams & Connolly LLP, Washington, DC, Attorney for Amicus Curiae Cardinal Health, Inc.

John J. Kastner, Jr., Rachel B. Weil, Steven J. Boranian, Jennings, Strouss & Salmon, P.L.C., Tucson, Attorney for Amicus Curiae AmerisourceBergen Drug Corporation

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix, Attorney for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

Bradley J. Johnston, Levi T. Claridge, The Cavanagh Law Firm, Phoenix; Charles C. Lifland, Sina S. Aria, O'Melveny & Myers LLP, Los Angeles, CA; Steve Brody, O'Melveny & Myers LLP, Washington, DC; Todd Jackson, Jean Roof, Jackson & Oden, P.C. Tucson; André H. Merrett, Thorpe Shwer, P.C., Phoenix, John D. Lombardo, Jake R. Miller, Arnold & Porter, Los Angeles, CA; Richard M. Amoroso, Gregory A. Davis, Squire Patton Boggs (US) LLP, Phoenix; Brent A. Hawkins, Morgan, Lewis & Bockius LLP, San Francisco, CA; Brian M. Ercole, Morgan, Lewis & Bockius LLP, Miami, Florida, Attorneys for Amicus Curiae Pharmaceutical Manufacturers

_____

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, and PELANDER (Retired)* joined.**

_____

_____

* Justice William G. Montgomery has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Justice John Pelander (Ret.), was designated to sit in this matter.

** Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

JUSTICE BOLICK, opinion of the Court:

¶1        This case concerns whether a hospital may directly recover from a third party the costs of uncompensated medical care provided to patients whose need for treatment the third party allegedly caused, and whether a pharmacy that self-distributes prescription opioids to its affiliated pharmacies owes a duty to a hospital that incurs costs to treat opioid-addicted patients. We hold that the exclusive right for a hospital to recover from a third-party tortfeasor is through the medical lien statutes and that a pharmacy does not owe a duty to a hospital under the facts alleged here.

## I.        BACKGROUND

¶2        CVS Health Corporation operates centers that distribute prescription drugs to CVS-branded retail pharmacies, which in turn sell those medications to individual patients. Tucson Medical Center ("TMC") is a nonprofit community hospital serving residents throughout southern Arizona.

¶3        In October 2018, TMC filed a complaint alleging a broad "conspiracy" among drug manufacturers, distributors, and marketers (the "Marketing and Distributor Defendants") to establish a "network to promote the use of opioids" by making "misrepresentations and omissions regarding the appropriate uses, risks, and safety of opioids, to increase sales, revenue, and profit from their opioid products." In short, TMC alleged the Marketing and Distributor Defendants created a false narrative of opioid-friendly messaging, fueling the national opioid epidemic.

¶4        In July 2019, TMC filed its First Amended Complaint (the "Complaint"), adding CVS Health Corporation; CVS Pharmacy, Inc.; CVS Arizona, LLC; and specific CVS Pharmacies (collectively, "CVS") as defendants. TMC's Complaint alleged that CVS, together with the Marketing and Distributor Defendants, "extract billions of dollars of revenue from the addicted American public while hospitals sustain tens of millions of dollars of losses caused as a result of the reasonably foreseeable consequences of the prescription opioid addiction epidemic." The Complaint also alleged that CVS "failed to exercise due care in dispensing,

and instead dispensed far more opioids into Arizona communities than were needed for licit use." With respect to the individual CVS Pharmacies, the Complaint alleged that each such store has a duty to establish policies and procedures to avoid filling prescriptions indicative of abuse, to train their employees on these policies and procedures, and to report potential diversion of opioids—which occurs when individuals obtain prescription opioids for nonmedical purposes—to the appropriate authorities.

¶5 The Complaint alleged that all defendants, including CVS, were liable for negligence, wanton negligence, negligence per se, negligent distribution, nuisance, and unjust enrichment (respectively, Counts 3, 4, 5, 7, 8, and 9). TMC alleged hospitals within the state incur "millions of dollars in damages for the costs of uncompensated care," and that TMC suffered additional damages by incurring operating expenses, including "additional training, additional security. . . . [and] special programs over and above their ordinary hospital services" due to caring for opioid-addicted patients. Unlike the hospitals in *Ansley v. Banner Health Network*, TMC does not seek damages for Medicaid patients. *See* 248 Ariz. 143, 153 ¶ 45 (2020) (holding that the lien statutes cannot allow hospitals to recover the costs of medical care beyond the amounts provided by Medicaid).

¶6 CVS moved to dismiss the Complaint, arguing, as relevant here, that: (1) Arizona's medical lien statutes, specifically, A.R.S. § 33-934(A), precluded all TMC's claims against it; and (2) CVS "did not owe a duty to protect plaintiff from the harm alleged in the complaint." CVS also claimed TMC failed to state a legally cognizable claim against it for nuisance or unjust enrichment.[1]

¶7 The trial court denied CVS's motion to dismiss, permitting all claims against CVS to proceed. The court determined that TMC asserted a direct claim for damages, which included claims for uncompensated patient bills, and that it must take TMC's factual assertion of direct loss as

---

[1] The parties discuss TMC's public nuisance claim in their briefs; however, we did not accept review on that issue and decline to address it here. *See Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 21 (2003). The unjust enrichment claim is also not before us.

true. The court further found that "[s]tatutes and case law provide a potential public policy basis for a CVS duty to [TMC]," that public policy favors "regulating and preventing harm from opioids, whether distributed or dispensed improperly under the law," and that TMC "would arguably be in a class of persons protected" by the statutes.

**¶8** CVS filed a petition for special action in the court of appeals, which declined jurisdiction. Judge Brearcliffe dissented, stating the court should accept jurisdiction and grant relief to CVS.

**¶9** We granted review because application of the Arizona medical lien statutes, A.R.S. §§ 33-931 to -936, and whether a pharmacy owes a duty to a hospital for the distribution of opioids to third parties, present issues of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

**¶10** The only issue presently before us is whether the trial court should have dismissed the negligence claims against CVS. Dismissal is appropriate under Arizona Rule of Civil Procedure 12(b)(6) if, "as a matter of law . . . plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 224 ¶ 4 (1998). Because questions of law are reviewed de novo, we review dismissal under Rule 12(b)(6) de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 356 ¶ 8 (2012).

**¶11** Our analysis in this case is informed by both federal and state law. Federal law regulates the dispensing of pharmacological drugs and addresses the opioid epidemic. State law generally governs the obligations flowing from one person or entity to another with respect to injury claims and remedies for damages. *See generally In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745 (N.D. Ohio 2020) (applying federal statutes and Florida tort law in consolidated opioid cases in multidistrict federal litigation). Here, TMC alleges that by various acts of negligence, the CVS defendants inflicted economic harm on the hospital both in the form of uncompensated

care it was required to provide to opioid-addicted patients, and for additional expenses it incurred as a result of the opioid epidemic. We refer to the first type of economic damages as "indirect" or "derivative" because they are occasioned by the alleged inadequate compensation for patient care, and the second type as "direct" because they are costs directly incurred by TMC.

¶12 CVS argues that TMC's claims for indirect damages are foreclosed by Arizona's medical lien statutes, and that the negligence claims for direct damages fail because CVS lacks a requisite duty as a matter of law. We address each argument in turn.

### A. Arizona's Medical Lien Statutes

¶13 TMC asserts it has been harmed by CVS's improper distribution of opioids, which fueled the opioid epidemic and foreseeably caused damages for the costs of uncompensated care to treat opioid-addicted patients. Although TMC contends the harm it suffered is direct, TMC's negligence-based claim for uncompensated patient care is actually based, at most, on CVS's infliction of harm on opioid-addicted patients, rather than infliction of harm directly on TMC. *Cf. In re Tobacco/Governmental Health Care Costs Litig.*, 83 F. Supp. 2d 125, 126 (D.D.C. 1999) (dismissing the Republic of Guatemala's claims to recover citizens' health care costs because the alleged injury was derivative of the citizens' injuries). Therefore, TMC's direct claim against CVS results from an indirect, derivative injury—the personal injuries to patients that resulted in increased hospital treatment expenses. In essence, TMC seeks to stand in the shoes of its patients to recover for the uncompensated care.

¶14 Arizona's medical lien statutes, §§ 33-931 to -936, authorize hospitals to impose a lien against "all claims of liability or indemnity . . . for damages accruing to the person to whom the [hospital's] services are rendered . . . on account of the injuries that gave rise to the claims and that required the services." § 33-931(A). The medical lien statutes, accordingly, govern claims for indirect damages and "extend to health care providers a remedy not available under the common law—the ability to enforce a lien

against those liable to the patient for damages in order to secure the providers' customary charges for care and treatment of an injured person." *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 7 (2016) (quoting *Blankenbaker v. Jonovich*, 205 Ariz. 383, 388 ¶ 22 (2003)). "The lien shall be for the claimant's customary charges for care and treatment or transportation of an injured person." § 33-931(A).

¶15 Arizona, however, prohibits assignment of personal injury claims. *See Allstate Ins. Co. v. Druke*, 118 Ariz. 301, 303–04 (1978); *State Farm Fire & Cas. Co. v. Knapp*, 107 Ariz. 184, 185 (1971). And TMC cannot circumvent this rule by asserting a direct claim for uncompensated care against a third party it contends caused personal injuries to its patients. *See United Food & Com. Workers Unions, Emps. Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271, 1274 (11th Cir. 2000) ("The usual common law rule is that a health-care provider has no direct cause of action in tort against one who injures the provider's beneficiary, imposing increased costs upon the provider."). To do so would create an end-run around the no-assignment principle. *See Allstate*, 118 Ariz. at 304 (in rejecting assignment of claims, the Court remarked that "[w]hatever the form, whatever the label, whatever the theory, the result is the same"). Not insignificantly, it would also deprive patients of the ability to successfully assert claims against CVS.

¶16 Barred from pursuing a negligence claim against CVS to recover indirect damages, TMC is limited to suing the patient or perfecting and collecting on a statutory lien. The remedy provided by the medical lien statutes is exclusive because those statutes "create[] a right and also provide[] a complete and valid remedy for the right created." *See Blankenbaker*, 205 Ariz. at 387 ¶ 18 (quoting *Valley Drive-In Theatre Corp. v. Superior Court*, 79 Ariz. 396, 400 (1955)). Absent coverage by the medical lien statutes, a hospital may not assert a claim against a third party for uncompensated patient care. In sum, TMC's claims for uncompensated care provided for patients' injuries are barred. But because the lien statutes do not displace TMC's claims for direct damages, we next address whether TMC can maintain its negligence claims to recover such damages. *See* § 33-931(C) ("The lien entitlements authorized by subsection A of this section and the assignment authorized by subsection B of this section are

applicable to all *customary charges* by hospitals or ambulances of political subdivisions." (emphasis added)).

**B. Duty**

**¶17** TMC's negligence claims for direct damages similarly fail because CVS does not owe a duty to TMC under the facts alleged.

**¶18** "To establish a defendant's liability for a negligence claim, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563–64 ¶ 7 (2018). We determine whether a legal duty exists without considering the case-specific facts concerning breach and causation. *Id.* at 564 ¶ 7.

**¶19** In *Quiroz*, we outlined Arizona's duty framework. First, duty is not presumed, and the plaintiff has the burden of establishing its existence. *Id.* at 563 ¶ 2. Second, foreseeability is not a factor in determining duty. *Id.* (citing *Gipson v. Kasey*, 214 Ariz. 141, 144 ¶ 15 (2007)). Third, duty is based on common law special relationships or relationships created by public policy. *Id.* Finally, the sources for identifying public policy are state and federal statutes and the common law. *Id.*

**¶20** "[S]pecial relationships [are] recognized by the common law, contracts, or 'conduct undertaken by the defendant.'" *Id.* at 565 ¶ 14 (quoting *Gipson*, 214 Ariz. at 145 ¶¶ 18–19). As a threshold matter here, CVS does not have a special relationship with TMC. In such circumstances, absent clearly expressed public policy, we do not find a duty flowing from one to the other.

**¶21** "[W]e exercise great restraint in declaring public policy," which is ordinarily the prerogative of the legislative bodies. *Id.* at 566 ¶ 19. "Public policy creating a duty is based on our state and federal statutes and the common law . . . [,] specifically, case law and Restatement sections consistent with Arizona law." *Id.* at 565 ¶ 15, 567 ¶ 20. Statutes "create a duty when a plaintiff 'is within the class of persons to be protected by the

statute and the harm that occurred . . . is the risk that the statute sought to protect against.'" *Id.* at 565 ¶ 15 (quoting *Gipson*, 214 Ariz. at 146 ¶ 26).

**¶22** TMC contends that CVS's duty derives from public policy. Specifically, it argues that federal and state statutes, including the Controlled Substances Act ("CSA") (21 U.S.C. § 801 et seq.), the Arizona Uniform Controlled Substances Act ("AUCSA") (A.R.S. § 36-2501 et seq.), and the Arizona Opioid Epidemic Act ("AOEA") (S.B. 1001, 53rd Leg., 1st Spec. Sess. (Ariz. 2018)), establish that CVS owed a duty of care to TMC. However, there is no legally cognizable duty, public policy-based or otherwise, that would allow TMC to assert a negligence claim against CVS.

**¶23** Public policy does not establish a duty from CVS to TMC. TMC relies on statutes prohibiting the distribution of prescription drugs, such as the CSA and AUCSA, to establish a public policy-based duty to hospitals.[2] But the class protected by those statutes is prescription-drug users, not hospitals. The CSA and AUCSA, for example, were enacted to combat drug abuse and control the traffic of controlled substances. *See Reed-Kaliher v. Hoggatt*, 237 Ariz. 119, 124 ¶ 22 (2015) ("The manifest purpose of the CSA was 'to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances.'" (quoting *Gonzales v. Raich*, 545 U.S. 1, 12 (2005))); Unif. Controlled Substances Act prefatory note (Unif. L. Comm'n 1994). The CSA (and the AUCSA by extension) protect "individual members of the public from falling victim to drug misuse and abuse." *See In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d at 788. Indeed, TMC acknowledges that the CSA's and AUCSA's overall objective is to protect against addiction, overdose, and death as a result of drug abuse. But TMC is a hospital. And a hospital cannot suffer from addiction, overdose, and death, and thus does not fall within the class of persons meant to be protected. *See Gipson*, 214 Ariz. at 146 ¶¶ 25–26; *In*

---

[2] TMC further relies on *Kromko v. Arizona Board of Regents*, 149 Ariz. 319, 321 (1986), to find a duty based on public policy. However, *Kromko* does not discuss duty. Although *Kromko* supports the proposition that a public or nonprofit hospital serves a public purpose, this conclusion was regarding the Gift Clause in article 9, section 7 of the Arizona Constitution. 149 Ariz. at 321.

*re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d at 788 ("West Boca, a hospital system, is not an 'individual member of the public' that could fall victim to drug misuse and abuse. West Boca is not an intended beneficiary of the CSA."). Nor is the economic harm here of the type that the CSA and AUCSA are intended to protect against. *See In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d at 788; H.B. 2157, 34th Leg., 1st Reg. Sess. (Ariz. 1979) (adopting the AUCSA); Unif. Controlled Substances Act prefatory note (Unif. L. Comm'n 1994).

¶24 For the same reasons, TMC's reliance on the AOEA is misplaced. The AOEA is intended to help Arizona address the opioid crisis and prescription-drug users affected by it. *See* S.B. 1001, 53rd Leg., 1st Spec. Sess. (Ariz. 2018); Ariz. State Senate Fact Sheet for S.B. 1001, 53rd Leg., 1st Spec. Sess. (Jan. 26, 2018). The AOEA contains provisions affecting hospitals, such as: establishing requirements for prescribing, administering, and dispensing schedule II opioids; adding criminal penalties for violations; and requiring hospitals that offer substance abuse treatment to adhere to reporting requirements and to refer overdose patients to behavior health service providers. *See* A.R.S. §§ 13-2310; 36-109, -407, -2525, -2606. However, notwithstanding the AOEA's impact on hospitals, it did not create a duty flowing from pharmacies to hospitals.

¶25 TMC next argues that the medical lien statutes support a public policy-based duty from CVS to TMC. As the trial court recognized, the medical lien statutes demonstrate "a public policy in favor of seeking to compensate a hospital that's providing medical care for a party who cannot pay in the community." However, the medical lien statutes do not regulate conduct, as would be necessary to establish a duty. *See Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 268 ¶ 10 (2010). "Generally, a cause of action for negligence arises from a duty, a determination that a person is required to conform to a particular standard of conduct." *Id.*; *Gipson*, 214 Ariz. at 143 ¶ 10. These statutes do not attempt to regulate conduct in any way but instead provide an avenue for hospitals to recoup customary patient charges. *See, e.g.*, *Gipson*, 214 Ariz. at 147 ¶ 32 (finding a duty of care based on statutes prohibiting distribution of prescription drugs); *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 255–56 (1994) (finding a duty of care based on laws prohibiting furnishing alcohol to minors). The

medical lien statutes cannot be used by TMC to establish a public policy-based duty from a pharmacy to a hospital.

¶26    TMC also seeks support from 42 U.S.C. § 1395dd(a) and (b), which requires hospitals to provide necessary medical screening and stabilizing treatment to patients suffering emergency medical conditions. But that requirement does not establish a duty between a pharmacy and hospital. Although that requirement arguably places a hospital at risk of incurring additional expenses, any claim to recoup such expenses belongs to the hospital to assert against the patient. It does not provide a right to assert claims against third parties, such as pharmacies.

¶27    Finally, TMC's pursuit of economic damages is precluded because TMC cannot recover for purely economic harm absent some "special reason" justifying finding a duty to avoid economic harm. *See Lips*, 224 Ariz. at 268 ¶¶ 10–11. This Court has recognized a duty based on purely economic loss only in a limited number of circumstances, such as in "particular professional and business relationships." *See id.* at ¶¶ 11–12 (stating that "[c]ourts have not recognized a general duty to exercise reasonable care for the purely economic well-being of others" in order to "avoid imposing onerous and possibly indeterminate liability on defendants"). And TMC cites no cases allowing a negligence claim against a third party for purely economic loss.

¶28    Here, no "special reason" exists to impose a duty on CVS to avoid economic harm to TMC. TMC urges us to recognize an exception for the "closed system" in the pharmaceutical industry that is designed to protect against improper distribution and prescription-drug abuse, but we are not empowered to create such an exception absent a clear public policy directive, nor can we fathom the applicability and limits of such an inchoate doctrine based upon the arguments presented.

¶29    We recognize the tremendous costs imposed by the opioid crisis on society generally, and hospitals specifically. Jennifer Bresnick, *Hospitals Face Higher Costs, More ED Visits from Opioid Abuse*, Health IT Analytics (Dec. 21, 2016), https://healthitanalytics.com/news/hospitals-face-higher-costs-more-ed-visits-from-opioid-abuse. The human costs are

tragic. However, it is for Congress and the legislature, not the courts, to create methods to alleviate those costs. Arizona law neither imposes nor supports the imposition of a duty from pharmacies to hospitals under the facts of this action.

### III.   CONCLUSION

**¶30**   For the foregoing reasons, we reverse the trial court's ruling denying CVS's motion to dismiss TMC's negligence claims (Counts 3, 4, 5, and 7). We remand the case to the trial court to dismiss the negligence-based claims and for further proceedings on the remaining public nuisance and unjust enrichment claims.