IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**CAL-AM PROPERTIES INC,**
*Plaintiff/Appellant,*

*v.*

**EDAIS ENGINEERING INC,**
*Defendant/Appellee.*

No. CV-21-0129-PR
Filed May 23, 2022

Appeal from the Superior Court in Maricopa County
The Honorable Timothy J. Thomason, Judge
No. CV2017-012518
**AFFIRMED**

Memorandum Decision of the Court of Appeals,
Division One
No. 1-CA-CV 20-0279
Filed April 15, 2021
**AFFIRMED**

COUNSEL:

Stephen E. Richman, Bennett Evan Cooper (argued), Vail C. Cloar, Emily G. Jeffries, Dickinson Wright PLLC, Phoenix, Attorneys for Cal-Am Properties, Inc.

Christopher D. Hossack (argued), Clark Hill PLC, Scottsdale, Attorneys for Edais Engineering, Inc.

John R. Jefferies, Justin A. Robles, Fennemore Craig P.C., Phoenix; Michael J. Holden, Barry A. Willits, Holden Willits PLC, Phoenix; D. Kim Lough, Jennings Haug Cunningham, Phoenix; Richard A. Friedlander, Lang & Klain, PC, Scottsdale; Robert F. Roos, Frances J. Haynes, Lewis Roca, Phoenix; Melvin C. Cohen, Bernardo M. Velasco, Mesch Clark Rothschild,

Tucson; Richard B. Murphy, Murphy Cordier PLC, Phoenix; James J. Sienicki, Amanda Z. Weaver, Snell & Wilmer L.L.P., Phoenix; and Stephen E. Jackson, Chris R. Baniszewski, Warner Angle Hallam Jackson & Formanek PLC, Phoenix, Attorneys for Amicus Curiae ABA/Arizona Builders Alliance

Jacqueline Pons-Bunney, Brian P. Roteliuk, Martha L. Bringard, W & D Law LLP, Phoenix, Attorneys for Amici Curiae American Council of Engineering Companies of Arizona and Arizona Chapter of American Institute of Architects

---

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, BEENE, MONTGOMERY, and KING joined.

---

JUSTICE LOPEZ, opinion of the Court:

¶1 Today we revisit our holding in *Donnelly Construction Company v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 187 (1984), which held that a design professional's duty to use ordinary skill, care, and diligence in rendering professional services extends both to persons in privity with the professional and to persons foreseeably affected by a breach of that duty. We hold that under Arizona's post-*Gipson* framework, which repudiated foreseeability as a basis for duty, design professionals lacking privity of contract with project owners do not owe a duty to those owners to reimburse them for purely economic damages.

## BACKGROUND

¶2 Cal-Am Properties, Inc. ("Cal-Am") is a developer and operator of RV and mobile-home parks. In 2014, Cal-Am leased the Sundance RV Resort in Yuma, Arizona, from its owner, intending to construct a new banquet and concert hall on the property. Although the owner of the property provided the funding for the construction of the new hall, Cal-Am managed the project. Cal-Am hired a contractor, VB Nickle, to design and construct the hall, who then hired Edais Engineering, Inc. ("Edais") to survey the property and place construction stakes to mark the permitted location of the hall. This arrangement created two contracts: Cal-Am's with VB Nickle and VB Nickle's with Edais; no contract existed between Edais and Cal-Am. Edais concedes that its placement of the stakes

was defective. As a result, the hall was constructed ten feet north of the planned location, and Cal-Am was forced to adjust its site plan accordingly which eliminated eight RV parking spaces planned near the hall.

¶3 Cal-Am sued Edais for various claims including the negligence claim at issue here. The trial court granted summary judgment for Edais on the negligence claim finding that Cal-Am could not recover its purely economic damages. The court of appeals held that Edais did not owe a duty to Cal-Am and affirmed the trial court. *Cal-Am Props. Inc. v. Edais Eng'g Inc.*, No. 1 CA-CV 20-0279, 2021 WL 1422738, at \*3 ¶¶ 15, 18 (Ariz. App. Apr. 15, 2021) (mem. decision). We granted review to reexamine our holding in *Donnelly*—that design professionals may be liable to third parties who suffer purely economic damages resulting from the professionals' negligence—under Arizona's current duty framework as described in *Quiroz v. ALCOA Inc.*, 243 Ariz. 560 (2018). This is an issue of statewide importance over which we have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

¶4 We determine the legal issue of whether a duty exists de novo. *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373 ¶ 14 (2021).

¶5 A negligence claim requires proof of four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9 (2007). The existence of a duty is a legal issue decided by the court. *Id.* "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Id.* ¶ 11.

¶6 In *Donnelly*, we held that "[d]esign professionals have a duty to use ordinary skill, care, and diligence in rendering their professional services" and confirmed that such liability extends to "foreseeable injuries to foreseeable victims which proximately result from . . . negligent performance of their professional services." 139 Ariz. at 187–88. In other words, the potential liability of design professionals, such as land surveyors, for negligence extended not only to the entity who contracted

them, but to other foreseeable plaintiffs which may include property or project owners.

**¶7** *Donnelly*'s holding controlled on the existence of such a duty until our decision in *Gipson*. There, we held that "foreseeability is not a factor to be considered by courts when making determinations of duty" and we "reject[ed] any contrary suggestion in prior opinions." *Gipson*, 214 Ariz. at 144 ¶ 15. We have since clarified that "[p]ost-*Gipson*, to the extent our prior cases relied on foreseeability to determine duty, they are no longer valid." *Quiroz*, 243 Ariz. at 565 ¶ 12. Indeed, we have noted repeatedly that *Donnelly* employed the now-rejected foreseeability framework. *See id.* at 564 ¶ 10 (citing *Donnelly* as an example of a prior case that relied on foreseeability); *Gipson*, 214 Ariz. at 144 ¶ 14 (same); *Flagstaff Affordable Hous. Ltd. v. Design All., Inc.*, 223 Ariz. 320, 327 ¶ 35 n.4 (2010) (stating that we have "rejected *Donnelly*'s reliance on foreseeability to determine the existence of a duty of care for purposes of tort law"). To the extent that *Donnelly*'s viability remains in question today, we clarify that it is no longer good law.

**¶8** In rejecting *Donnelly*, however, we do not foreclose the possibility that a duty may exist between design professionals and those not in privity with them. Whether a duty arises here or in any other context must be analyzed under the post-*Gipson* duty framework.

## II.

**¶9** In Arizona, duties are based on either special relationships or on public policy. *Dinsmoor*, 251 Ariz. at 373 ¶ 14.

## A.

**¶10** Special relationships that give rise to a duty in negligence include legally recognized common law relationships and those formed by contract, familial relationship, or joint undertaking. *Id.* There are various recognized categorical relationships that give rise to a duty in Arizona. *See, e.g.*, *Quiroz*, 243 Ariz. at 567 ¶ 23 (landowner-invitee, landowner-licensee, employer-employee); *Gipson*, 214 Ariz. at 145 ¶ 19 (tavern owner-patron); *Dinsmoor*, 251 Ariz. at 373 ¶ 15 (school-student). But, despite Cal-Am's contention that *Donnelly* created a special relationship between design professionals and project owners and that other jurisdictions have followed

suit, Arizona does not recognize design professionals as parties to any such relationship.

**¶11** A duty based on a special relationship requires a preexisting, recognized relationship between the parties, *see Quiroz*, 243 Ariz. at 565 ¶ 15, and here there is none. Cal-Am's argument that *Donnelly* recognized such a relationship is unpersuasive because its holding relied primarily, if not exclusively, on a foreseeability framework which has since been rejected. *See supra* ¶¶ 4–7; *Donnelly*, 139 Ariz. at 188 ("We only hold here that design professionals are liable for *foreseeable* injuries to *foreseeable* victims which proximately result from their negligent performance of their professional services." (emphasis added)). Therefore, *Donnelly* did not recognize a preexisting relationship under Arizona law.

**¶12** Cal-Am also relies on other jurisdictions that have recognized a duty based on the relationship between design professionals and owners. These cases are unavailing. Most of these jurisdictions rely on foreseeability to recognize such relationships, *see, e.g.*, *E. Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266, 274–75 (W. Va. 2001) (citing *Donnelly* and acknowledging, without disapproval, the foreseeability rationale used in it and other related decisions); *Beacon Residential Cmty. Ass'n v. Skidmore, Owings & Merrill LLP*, 327 P.3d 850, 862 (Cal. 2014) (factoring in its conclusion that "[i]t was foreseeable that these homeowners would be among the limited class of persons harmed by the negligently designed units"), and negligence actions are governed by state common law, *US Airways, Inc. v. Qwest Corp.*, 238 Ariz. 413, 418 ¶ 19 (App. 2015), *aff'd in part, depublished in part on other grounds*, 241 Ariz. 182 (2016) (per curiam). Arizona has yet to recognize the relationship between a design professional and an owner as a categorical, special relationship. We decline to do so now.

**¶13** Here, no contractual or familial relationship exists between Cal-Am and Edais. And although liability for a joint undertaking may exist despite a lack of privity between two parties, this concept necessarily involves conduct a defendant undertook *directly* with or for a plaintiff, *see, e.g.*, *Stanley v. McCarver*, 208 Ariz. 219, 223 ¶ 13 (2004) (finding a duty where doctor agreed, for consideration, to interpret patient's medical record and report results), and no liability exists where, as here, parts of an overall enterprise were organized by another entity and the defendant's relevant undertaking was with and for that entity. Thus, no "special relationship" gives rise to a duty in this case.

**B.**

¶14        Public policy, reflected in state and federal statutes and embodied in the common law, can also be a source of duty. *Quiroz*, 243 Ariz. at 565 ¶ 15. The primary source of duties based on public policy in Arizona is our state statutes. *Id.* at 566 ¶ 18. For a statute to create a duty: (1) the plaintiff must be "within the class of persons to be protected by the statute," and (2) the harm must be of the type "the statute sought to protect against." *Id.* at 565 ¶ 15 (quoting *Gipson*, 214 Ariz. at 146 ¶ 26).

¶15        Cal-Am argues that statutes and administrative regulations governing qualification and minimum standards for design professionals establish a duty. The stated purpose of the statutes governing the work of architects, engineers, geologists, home inspectors, landscape architects, and surveyors is "to provide for the safety, health and welfare of the public." A.R.S. § 32-101(A). But this case does not implicate "safety" or "health," and as included alongside those interests, "welfare" most reasonably connotes *physical* welfare, not economic welfare. *See Sullivan v. Pulte Home Corp.*, 237 Ariz. 547, 550–51 ¶ 10 (App. 2015) (noting that public safety statutes supporting tort duties generally involve injuries or death). Interpreting "welfare" to exclude economic welfare is also consistent with the general reluctance of courts to recognize tort duties "to exercise reasonable care for the purely economic well-being of others." *Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 268 ¶ 11 (2010).

¶16        The statutes and regulations governing surveyors and similar professionals were not designed to protect plaintiffs like Cal-Am—project owners—from purely economic harm. Instead, their purpose is to protect the safety, health, and welfare of individuals who enter the buildings and structures, which regulated professionals construct and maintain, from injury resulting from poor workmanship. *Cf. CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 517–18 ¶¶ 22–23 (2021) (reasoning that statutes enacted to control drug abuse were designed to protect drug users and could not be a source of duty to a hospital). For this reason, Cal-Am's argument that a design professional's duty is analogous to that of accountants and attorneys with unique professional duties fails: accountants, attorneys, and other professionals do not owe duties to the world but rather to the small universe of potential plaintiffs protected by their governing standards. *See Barmat v. John & Jane Doe Partners A-D*, 155 Ariz. 519, 523 (1987) ("As a matter of public policy, attorneys, accountants, and other professionals owe

special duties *to their clients* . . . ." (emphasis added)); *see also Lips*, 224 Ariz. at 268 ¶ 12 (citing *Barmat* for this proposition). Cal-Am's status as the owner of a project who suffered purely economic injury resulting from a design professional's negligence does not implicate the public policy embodied in Arizona's current statutory and regulatory scheme. Certainly, the legislature may amend or enact legislation making its intent to create liability for such injuries clear, but it has not done so.

¶17 Although "we exercise great restraint in declaring public policy" in the absence of legislative guidance, our jurisprudence and Restatement sections consistent with Arizona law can also generate duties based on public policy. *Quiroz*, 243 Ariz. at 566–67 ¶¶ 19–20.

¶18 Cal-Am argues that the Restatement (Second) of Torts provides a common law source of Edais' alleged duty here. Section 324A states, in relevant part, that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for *physical harm* resulting from his failure to exercise reasonable care to protect his undertaking . . . .

Restatement (Second) of Torts § 324A (Am. L. Inst. 1965) (emphasis added); *see also Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 272 ¶ 36 (2021) (noting that Arizona has adopted § 324A). But § 324A is inapplicable because the misplaced staking did not physically harm the land itself. Instead, the staking affected only the *value* of Cal-Am's leasehold interest as the property could not be used as originally anticipated. Further, § 324A applies only when "the nature of the services undertaken . . . [is] for the specific purpose of protecting a third party (or their things) from harm." *Dabush*, 250 Ariz. at 273 ¶ 39 (finding no duty when defendants undertook to repair a leaky roof, not to protect the plaintiff from falling through a skylight). Here, Edais was hired to place construction stakes according to plans furnished by VB Nickle. The contracted surveying services did not contemplate protecting Cal-Am or its things—i.e., its leasehold interest. We decline to extend § 324A's reach beyond what it expressly contemplates:

liability for physical harm to the people or property that the services sought to protect.[1]

¶19      Cal-Am also relies on the Restatement (Third) of Torts: Liability for Economic Harm § 6 (Am. L. Inst. 2020), which recognizes liability when "[a]n actor . . . performs a service for the benefit of others . . . if the actor fails to exercise reasonable care in performing it," but *only if* the loss was suffered by the entity for "whose benefit the actor performs the service" and "through reliance upon it in a transaction that the actor intends to influence." Comment b, which addresses "[t]hree-cornered construction disputes," clarifies that "[t]here is no liability in tort . . . when the owner of a construction project sues a subcontractor for negligence resulting in economic loss." *Id.* cmt. b. A subcontracted design professional, however, *would be* liable to another contractor if the design professional's negligent work provided a basis for reliance by the contractor. *Id.*

¶20      The missing element in this case is reliance: Cal-Am did not rely on Edais' defective staking, VB Nickle did. Under § 6, Edais *would be* liable to VB Nickle for losses it suffered due to its reliance on the defective staking. Thus, *Donnelly*'s resolution remains valid given its facts—a plaintiff-contractor who relied on defective plans prepared by a defendant-architect and suffered increased construction costs as a result—because its holding is supported by the plaintiff's reliance rather than foreseeability. *Donnelly*, 139 Ariz. at 185–86.

### III.

¶21      Our holding does not render Cal-Am or similarly situated plaintiffs devoid of a remedy. In general, when a project owner is economically harmed due to a subcontractor's negligence, it "is viewed just as a failure in the performance of [the subcontractor's] obligations to its contractual partner, not as a breach of duty in tort to . . . the owner of the project." Restatement (Third) § 6 cmt. b. The remedies available to the project owner sound in contract, not tort. For example, in a case of a

---

[1] In *Guerra v. State*, 237 Ariz. 183, 185–86 ¶ 11 (2015), we "question[ed]" our decision in *McCutchen v. Hill*, 147 Ariz. 401 (1985), "to the extent it found a duty under Restatement [(Second) of Torts] § 323 without discussing whether that section encompasses economic harm." Although § 323, companion to § 324A, contemplated liability not to third parties but to the entity for which the services were undertaken, we disavow *McCutchen* to the extent it interpreted § 323 to encompass purely economic harm.

subcontractor's defective workmanship, as here, the project owner could sue the general contractor it hired for breach of contract and, perhaps the subcontractor for breach of contract as a third-party beneficiary, *see Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 180 Ariz. 548, 552 (App. 1994) (discussing the third-party beneficiary doctrine in Arizona), or obtain an assignment of liability from the contractor. Consequently, *Donnelly*'s demise does not insulate design professionals from legal consequence for their negligence.

## CONCLUSION

¶22 Although *Donnelly* recognized a design professional's duty to project owners for foreseeable economic damages resulting from the professional's negligence, we disavow *Donnelly* because its holding is based upon foreseeability, a duty framework this Court jettisoned in *Gipson* fifteen years ago. Thus, we affirm the trial court's grant of summary judgment in favor of Edais and affirm the court of appeals' memorandum decision.