IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**SAMUEL AVITIA,**
*Plaintiff/Appellant,*

*v.*

**CRISIS PREPARATION AND RECOVERY INC.,**
*Defendant/Appellee.*

————————

No. CV-22-0288-PR
Filed October 16, 2023

————————

Appeal from the Superior Court in Maricopa County
The Honorable Sally Schneider Duncan, Judge (Retired)
Nos. CV2016-051180
CV2017-050265
**AFFIRMED**

Opinion of the Court of Appeals, Division One
254 Ariz. 213 (2022)
**VACATED**

————————

COUNSEL:

David L. Abney (argued), Ahwatukee Legal Office, P.C., Phoenix; Darius O. Bursh, Marc D. McCain, Zari Panosian, McCain & Bursh Attorneys at Law, P.C., Scottsdale; and Jill Kennedy, Kennedy Kemmet PLLC, Phoenix, Attorneys for Samuel Avitia

Carol M. Romano (argued), Resnick & Louis, P.C., Scottsdale, Attorneys for Crisis Preparation and Recovery, Inc.

Lincoln Combs, O'Steen & Harrison, PLC, Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice

_____

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL and JUSTICES LOPEZ, BEENE, MONTGOMERY, and KING joined. VICE CHIEF JUSTICE TIMMER concurred in part, dissented in part, and concurred in the result.

_____

JUSTICE BOLICK, Opinion of the Court:

**¶1**        In this case we are asked to decide whether mental health professionals have a statutory or common law duty to third parties for harm caused by a patient under their care. We hold that the statutory duty to report child abuse or neglect under A.R.S. § 13-3620(A) does not encompass reporting a risk of future harm. We also hold that mental health professionals owe a duty to third parties based not on foreseeability of harm, but on their special relationship and public policy. Because prior judicial decisions found a duty in such circumstances based on foreseeability, *see Hamman v. County of Maricopa*, 161 Ariz. 58 (1989) and *Little v. All Phoenix South Community Mental Health Center*, 186 Ariz. 97 (App. 1996), we overrule those decisions.

## BACKGROUND

**¶2**        The mother of Samuel Avitia's twin boys ("Mother") has a long history of mental health problems. She has been evaluated and treated by numerous mental health professionals, including professionals working for Crisis Preparation and Recovery, Inc. ("Crisis Prep").

**¶3**        In May 2011, a Crisis Prep counselor attempted to evaluate Mother twice while she was receiving inpatient mental health treatment. However, the counselor was unsuccessful in completing an evaluation because Mother was too psychotic the first time and refused the evaluation on the second attempt. Records from her stay at the behavioral hospital reflect that Mother exhibited concerning behavior toward others and had

an infatuation with putting things in water as part of a ritualistic cleansing of spirits.

¶4         Mother met Avitia in the summer of 2012 and became pregnant shortly after.  In 2013, she gave birth to twin boys.  Avitia and Mother never married and lived separately.  In accordance with a custody order, the twins were in Avitia's care half the time.  Although he maintained his custody schedule, he had little communication with Mother.  Mother lived primarily with her mother ("Grandmother") and stepfather in their home, and sometimes with her father in his apartment.  Grandmother often cared for the twins.  Mother and her family informed Avitia that Mother had serious mental health issues, including suicidal ideation, that she had been hospitalized to address those issues, and that the twins were cared for by Mother's family during those periods.

¶5         In October 2013, Mother's parents took her to a Recovery Innovations facility because she reported seeing demons, was depressed and anxious, and was displaying erratic behavior at home.  While receiving inpatient mental health treatment, a Crisis Prep licensed professional counselor evaluated Mother and determined that she did not meet the criteria for seriously mentally ill status because she appeared "to be completely clear in thought and functioning fairly well once again."  However, the counselor determined that her symptoms "appear to meet criteria for Brief Psychotic Disorder with Marked Stressors and a secondary of Primary Insomnia."

¶6         Then in April 2014, Mother suffered an extreme psychotic episode and consequently was taken to an emergency room, where another Crisis Prep licensed professional evaluated her.  Grandmother told the counselor that she was "terrified" for Mother to be alone with the twins and that the family was concerned as to how she would behave with them.  The counselor concluded that Mother should be voluntarily transferred for inpatient care, treatment, and stabilization in a behavioral health unit.  Mother was told that if she refused this care, they would petition the court for involuntary treatment.  Mother then attempted to leave the hospital, assaulting hospital personnel in the process.

¶7         The next day, a different Crisis Prep licensed professional counselor initiated the process for involuntary court-ordered evaluation and treatment pursuant to A.R.S. § 36-523, alleging that Mother was a

danger to herself and others, and persistently or acutely disabled. The superior court granted the petition for court-ordered treatment, finding that Mother was a danger to herself and persistently or acutely disabled, but not a danger to others, then ordered inpatient treatment. Mother was transported to Desert Vista Behavioral Health Center ("Desert Vista").

¶8 At Desert Vista, Mother was evaluated by two professionals who disagreed on the level of treatment that Mother required. Thereafter, the superior court held an evidentiary hearing on another petition for court-ordered treatment to determine whether Mother met the seriously mentally ill criteria, which would require different treatment. The court found that as a result of her mental disorder, Mother was "persistently or acutely disabled and a danger to self," and there were no appropriate alternatives to treatment. The court therefore ordered combined inpatient and outpatient treatment. The record does not reflect that Crisis Prep employees evaluated or provided services to Mother after May 2014.

¶9 In May 2015, Mother's involuntary treatment order expired, and she was released. On August 10, 2015, Mother voluntarily sought treatment from Recovery Innovations again for concerns of danger to self. Recovery Innovations' staff assessed Mother and found her to be a danger to others and in need of emergency hospitalization. Mother was transferred to Desert Vista Hospital and a psychiatrist there petitioned for court-ordered treatment. Mother was discharged to her home and the petition was dismissed when the psychiatrist at Desert Vista Hospital informed the court that he could not proceed with the petition. Tragically, Mother drowned the twin boys five days later.

¶10 One year after the boys' deaths, Avitia filed a wrongful death claim against the state, Maricopa County, and numerous healthcare providers. As to Crisis Prep, Avitia's claims included negligence; medical negligence; negligent oversight, training, retention, and supervision; and respondeat superior liability. Avitia asserted that Crisis Prep had a duty to report Mother's abuse or neglect of the twins and had not done so. He also claimed that Crisis Prep failed in its common law duty to warn and protect the boys.

¶11 However, during Avitia's deposition, he admitted that when he would pick up his twins from Mother's parents' homes, "they were happy . . . always smiling," and that there were no "signs of abuse or

anything like that towards the kids." Avitia also stated that throughout the custody arrangement, he did not see any neglect of the twins and believed that Grandmother and stepfather provided a stable environment for them.

¶12 On motion for summary judgment brought by Crisis Prep and another healthcare provider, the superior court directed entry of final judgment in favor of Crisis Prep on all claims. The court found that Crisis Prep did not have a duty to report Mother's condition to the Department of Child Safety or any other state agency given that Mother was undergoing court-ordered treatment. Avitia timely appealed from this decision.

¶13 The court of appeals affirmed the superior court's decision to grant Crisis Prep's motion for summary judgment. *Avitia v. Crisis Preparation and Recovery Inc.*, 254 Ariz. 213, 215 ¶¶ 1–2 (App. 2022). The court of appeals addressed Avitia's two claimed sources of Crisis Prep's potential duty: (1) a statutory duty to report under § 13-3620(A); and (2) a common law duty to warn and protect foreseeable victims as recognized by *Hamman* and *Little*. *Id.* at 218–21 ¶¶ 25–39. In addressing the statutory duty, the court explained that under § 13-3620(A), Crisis Prep personnel had the duty in April or May of 2014 (over a year before the twins' deaths) to report "*if* they reasonably believed the twins were being, or had been, abused or neglected by Mother." *Id.* at 219 ¶ 28. However, the court found such a case did not present itself, and therefore Crisis Prep had no statutory duty to report under § 13-3620(A). *Id.* In addressing the common law duty based on a special relationship with Mother, the court declined to expand the duty "into one to warn and protect others based solely on foreseeability" because of subsequent precedent from this Court. *Id.* at 221 ¶ 39 (citing *Gipson v. Kasey*, 214 Ariz. 141 (2007); *Quiroz v. ALCOA Inc.*, 243 Ariz. 560 (2018); *Dinsmoor v. City of Phoenix*, 251 Ariz. 370 (2021)).

¶14 Avitia petitioned this Court for review of (1) whether the statutory duty to report child abuse or neglect under § 13-3620(A) encompasses reporting a risk of future harm; and (2) whether a common law duty to warn and protect foreseeable victims still exists after *Gipson* and its progeny. As to the second question, Avitia specifically asserted that the court of appeals erred by refusing to apply and questioning the viability of the "controlling precedent," *Hamman* and *Little*. These are important

unresolved issues of statewide concern. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶15** This Court reviews the meaning of Arizona statutes de novo. *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 16 (2022). The existence of a common law duty is also a question of law, which this Court reviews de novo. *Guerra v. State*, 237 Ariz. 183, 185 ¶ 7 (2015). We take up the two questions presented in turn.

### A.

**¶16** Our role in statutory interpretation is to give effect, whenever possible, to the plain meaning of the words chosen by the legislature. *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018). We derive meaning from the statutory provisions in their overall context. *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017).

**¶17** Section 13-3620(A) provides in relevant part:

> Any person who reasonably believes that a minor is or has been the victim of physical injury, abuse, child abuse, a reportable offense or neglect that appears to have been inflicted on the minor . . . shall immediately report or cause reports to be made of this information to a peace officer . . . . For the purposes of this subsection, "person" means:

> 1. Any physician, physician's assistant, optometrist, dentist, osteopathic physician, chiropractor, podiatrist, behavioral health professional, nurse, psychologist, counselor or social worker who develops the reasonable belief in the course of treating a patient.

**¶18** Crisis Prep does not dispute that its mental health professionals are encompassed within the definition of "person" in this statute. Rather, it denies that the statute imposes a duty to report about possible *future* abuse.

¶19        Avitia asserts that Crisis Prep's mental health professionals who interacted professionally with Mother had a duty under this statute to report neglect of the children to a peace officer.  Avitia attaches great weight to A.R.S. § 8-201(25)(a), which defines "[n]eglect" in relevant part as "[t]he inability or unwillingness of a parent . . . of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes substantial risk of harm to the child's health or welfare."

¶20        But § 8-201(25)(a) is a definitional provision, which does not itself create any duty.  Rather, that definition is imported into § 13-3620 through subsection (P)(3) ("'Neglect' has the same meaning prescribed in § 8-201.").  Thus, Crisis Prep owes a duty only if it is created by § 13-3620.

¶21        As a threshold matter, it is not clear that § 13-3620 applies to Crisis Prep at all in this context, because § 13-3620(A)(1) pertains only to mental health professionals who develop a reasonable belief regarding abuse or neglect "in the course of treating a patient."  It is not established that Crisis Prep was ever "treating" Mother, rather than simply evaluating her.  Moreover, the statutory context suggests that the duty to report chiefly applies when a minor *patient* who is being treated is abused or neglected.  *See L.A.R. v. Ludwig*, 170 Ariz. 24, 27 (App. 1991) (noting that the statute's purpose is to require "professionals who work with children to report instances of suspected child abuse"); § 13-3620(A) (establishing a duty to report injury, abuse, or neglect "that appears to have been inflicted on the minor by other than accidental means"); § 13-3620(A)(5) (encompassing "[a]ny other person who has responsibility for the care or treatment of the minor").  Here, Crisis Prep never interacted with the children.

¶22        However, we need not resolve whether a duty ever arises under § 13-3620(A) for a non-treating mental health professional to report harm to third parties because the statute's plain language clearly forecloses such a duty here.  The statute creates a duty only when a person subject to the statute "reasonably believes that a minor *is or has been* the victim" of injury, abuse, or neglect that "appears to *have been* inflicted on the minor." § 13-3620(A) (emphasis added).  That language is present and past tense, meaning that the belief pertains to existing or past circumstances, not speculation regarding the future.

¶23    Avitia presents no evidence suggesting that neglect or abuse had occurred in the past or was occurring during the period in which Crisis Prep was professionally interacting with Mother.  Therefore, even if Crisis Prep was "treating" Mother, it had no duty here because no evidence of past or ongoing abuse existed.  Grandmother cared for the twins when Mother struggled with her mental health and, as far as Crisis Prep knew, they were well cared for.  Indeed, Avitia was in regular contact with the children, and he testified at his deposition that he did not observe any abuse or neglect.  And notably, § 13-3620(A)(3) places the duty to report neglect or abuse on the parent, stepparent, or guardian of the minor as well.

¶24    Section 13-3620(A) imposes important duties to report abuse and neglect of children, but Avitia's broad reading would create an unintended incentive for mental health professionals to reflexively report patients with children to the police or to the Department of Child Safety anytime even a specter of harm arises.  *See Guerra*, 237 Ariz. at 187 ¶ 20 ("Just as '[p]ublic policy may support the recognition of a duty of care,' . . . policy considerations may militate against finding a duty in certain contexts." (alteration in original) (quoting *Gipson*, 214 Ariz. at 145 ¶ 23)).  By its plain meaning, the statute did not impose such a duty on Crisis Prep under the circumstances that existed while it was professionally interacting with Mother.

**B.**

¶25    Avitia also argues that the common law imposes a duty on mental health professionals to warn and protect foreseeable victims about known dangers.  In this case, such a duty would require warning caregivers or others in order to protect the children.

¶26    Under Arizona law, a duty in the negligence context arises either from special relationships or public policy, and we look primarily to statutes and common law to create and define duty.  *Quiroz*, 243 Ariz. at 563 ¶ 2.  The plaintiff bears the burden to establish that a duty exists.  *Id.* Whether a duty exists is a question of law and must be determined before case-specific facts are considered.  *Id.* at 564 ¶ 7.

¶27    Whether a duty exists between a non-treating mental health professional and a patient is not a question before us.  Assuming such a duty exists, the question here is whether, and to what extent, that duty

extends to third parties. Resolving this question takes us down a circuitous jurisprudential and statutory path.

¶28 In *Hamman*, the Court addressed the duty a psychiatrist owed the parents of a child he treated, where the psychiatrist allegedly failed to take action to prevent severe harm the child inflicted on his father. 161 Ariz. at 58. The court of appeals had applied the rule set forth in *Brady v. Hopper*, 570 F. Supp. 1333 (D. Colo. 1983), *aff'd*, 751 F.2d 329 (10th Cir. 1984), that "a psychiatrist incurs no duty to any third party unless his patient communicates to the psychiatrist a specific threat against a specific person." *Hamman*, 161 Ariz. at 60.

¶29 This Court rejected the *Brady* framework, instead applying *Tarasoff v. Regents of University of California*, 551 P.2d 334 (Cal. 1976), which concluded that once a therapist determines, or reasonably should have determined, that a patient poses a serious risk to commit violence against others, the therapist bears a duty to exercise reasonable care to protect the foreseeable victim of that danger. *Hamman*, 161 Ariz. at 63 (citing *Tarasoff*, 551 P.2d at 345). The Court adopted *Tarasoff*'s focus on foreseeability in determining whether a duty exists, holding that "the duty extends to third persons whose circumstances place them within the reasonably foreseeable area of danger where the violent conduct of the patient is a threat." *Id.* at 65.

¶30 Just after *Hamman* was decided, the legislature enacted A.R.S. § 36-517.02(A), which provided as follows:

> There shall be no cause of action against a mental health provider nor shall legal liability be imposed for breaching a duty to prevent harm to a person caused by a patient, unless both of the following occur:
>
> 1. The patient has communicated to the mental health provider an explicit threat of imminent serious physical harm or death to a clearly identified or identifiable victim or victims, and the patient has the apparent intent and ability to carry out such threat.
>
> 2. The mental health provider fails to take reasonable precautions.

This statute essentially adopted the *Brady* standard that was disavowed by *Hamman*.

¶31        Subsequently, the court of appeals overturned § 36-517.02 in *Little*. The court observed that the statute's wording "removes any doubt that [it] was intended to be the exclusive means of establishing liability in this context," thus purporting to overturn *Hamman*. *Little*, 186 Ariz. at 101–02. The court held the legislature could not do so in light of article 18, section 6 of the Arizona Constitution, which provides in relevant part that "[t]he right of action to recover damages for injuries shall never be abrogated." *Id.* at 105. It concluded that "§ 36-517.02 unconstitutionally abrogates the common law cause of action established in *Hamman*." *Id.*

¶32        Avitia argues that *Hamman* and *Little* are good law. We disagree.

¶33        Our cases after *Hamman* have recognized that foreseeability, upon which *Hamman* relied, is not an element in determining whether a duty exists. In *Gipson*, the Court observed that a "fact-specific analysis of the relationship between the parties is a problematic basis for determining if a duty of care exists," given that whether a duty exists is a question of law. 214 Ariz. at 145 ¶ 21. Accordingly, the Court held, in clear and categorical terms, "that foreseeability is not a factor to be considered by courts when making determinations of duty, and we reject any contrary suggestion in prior opinions." *Id.* at 144 ¶ 15.

¶34        *Quiroz* presented a factual scenario pertinent to the present case. There, a family in which the father brought home asbestos to which he was exposed in the workplace sued the employer for negligence for the death of another family member from mesothelioma. *Quiroz*, 243 Ariz. at 563 ¶ 3. The plaintiff argued that the employer owed a duty to foreseeable victims. *Id.* at 569 ¶ 36. We noted that although *Gipson* allowed foreseeability in considering the factual questions of breach of duty and causation in the negligence context, which are generally questions for the jury, it eliminated its use in determining the legal question of whether a duty exists. *Id.* at 565 ¶ 13. Because no special relationship existed between the employer and members of the employee's family, and public policy did not establish a duty, the company had no duty to third parties. *Id.* at 579 ¶ 90. We noted that "[p]ost-*Gipson*, to the extent our prior cases relied on foreseeability to determine duty, they are no longer valid." *Id.* at 565 ¶ 12.

**¶35**　　　　*Hamman* expressly relied on foreseeability to establish a psychiatrist's duty to third parties.[1] 161 Ariz. at 61 ("The danger reasonably to be perceived defines the duty to be obeyed."); *id.* at 65 ("We hold that the duty extends to third persons whose circumstances place them within the reasonably foreseeable area of danger . . . ."). *Hamman* is therefore one of the cases whose holding does not survive *Gipson* and subsequent decisions, it is not good law, and we overrule it. *See Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 81 ¶ 7 (2022) (overturning precedent that created a foreseeability-based duty).

**¶36**　　　　The partial dissent argues that we misread *Hamman*, as duty in that decision relied entirely on the special relationship between psychiatrist and patient. *Infra* ¶ 59. Although *Hamman* did predicate its duty analysis on that special relationship, it went on to determine a duty to *third persons* based on foreseeability. *See Hamman*, 161 Ariz. at 64 (holding that when a psychiatrist determines or should reasonably have determined that a patient poses a danger to third persons, "the psychiatrist has a *duty* to exercise reasonable care to protect the *foreseeable victim* of that danger" (first emphasis added)). The Court expressly rejected as "too narrow" *Brady*'s rule against a duty to third parties in such circumstances. *Id.* at 63.

**¶37**　　　　The partial dissent insists that *Hamman*'s foreseeability analysis goes not to duty but to the "scope" of the duty. In this context, that is a distinction without a difference: *Hamman* uses foreseeability precisely to recognize a duty to third parties that would otherwise not exist. 161 Ariz. at 64. In other words, foreseeability is the bootstrap by which a duty between psychiatrist and patient based on a special relationship is extended to third parties. The trial court's grant of summary judgment under review in *Hamman* was based only and entirely on duty, *id.* at 60, rebutting any

---

[1] *Hamman* adopted the California Supreme Court's foreseeability standard to determine the existence of a duty. 161 Ariz. at 64. California courts often take a more expansive view of their role in shaping public policy than we do. *Compare, e.g., Loomis v. Amazon.com LLC*, 277 Cal. Rptr. 3d 769 (Cal. Ct. App. 2021) (judicially imposing strict liability on Amazon for the products it markets), *with Quiroz*, 243 Ariz. at 566 ¶ 19 (stating that "in the absence of a statute, we exercise great restraint in declaring public policy"). Therefore, we do not typically find California decisions persuasive in the context of judicially made public-policy-based tort law.

suggestion that the Court's foreseeability analysis was inadvertent or mere surplusage. *Gipson* subsequently held, contrary to prior rulings, that foreseeability cannot be used in determining duty *at all*. 214 Ariz. at 144 ¶ 15 ("To clarify, we now expressly hold that foreseeability is not a factor to be considered by courts when making determinations of duty, and we reject any contrary suggestion in prior opinions."); *accord Quiroz*, 243 Ariz. at 565 ¶¶ 12–13 ("To be clear, in eliminating foreseeability, *Gipson* changed our *duty framework* by limiting the duty analysis to special relationships and public policy," thus marking "a sea change in Arizona tort law."). We therefore correctly overrule *Hamman*.

¶38 Likewise, because we overrule *Hamman*, *Little*'s conclusion that "§ 36-517.02 unconstitutionally abrogates the common law cause of action established in *Hamman*," *Little*, 186 Ariz. at 105, is no longer viable. Article 18, section 6 of the Arizona Constitution only protects common law rights in existence at the time the Constitution was adopted or that are based on those rights. *See Torres v. JAI Dining Servs. (Phx.)*, CV-22-0142-PR, slip op. at 7 ¶ 9 (Ariz. Oct. 16, 2023) ("Throughout over a century of jurisprudence, this Court has never extended the anti-abrogation clause's protections to rights of action incognizable at statehood."); *Matthews v. Indus. Comm'n*, 254 Ariz. 157, 175 ¶ 36 (2022) (construing workers' compensation rights for accidents and injuries as those recognized when the Arizona Constitution was adopted); *Cronin v. Sheldon*, 195 Ariz. 531, 539 ¶ 37 (1999) (rejecting anti-abrogation clause protection for a wrongful discharge claim that "neither existed in 1912 when statehood was achieved, nor [evolved] from common law antecedents"); *see also* A.R.S. § 1-201 (adopting the common law "only so far as it is . . . not repugnant to or inconsistent with the . . . laws of this state").

¶39 *Hamman* did not base its holding in any established common law or public policy. Although *Tarasoff*, on which *Hamman* was based, purported to trace its standard to Restatement (Second) of Torts § 315 (Am. L. Inst. 1965), *see Hamman*, 161 Ariz. at 61–62 (*citing Tarasoff*, 551 P.2d at 342–43), nothing in § 315 gives rise to a foreseeability-based duty standard. Rather, § 315 recognizes a duty to control the conduct of a third party to prevent harm to another based on a special relationship with the third party. *See* Restatement (Second) § 315 cmt. b ("In the absence of either one of the kinds of special relations . . . the actor is not subject to liability if he fails, either intentionally or through inadvertence, to exercise his ability so to control the actions of third persons as to protect another from even the

most serious harm."). The Court in *Hamman* itself exercised the policy choice to reject the *Brady* standard, which applied that duty to mental health professionals in specific circumstances, as "too narrow," 161 Ariz. at 63, and to instead adopt the *Tarasoff* foreseeability framework, *id.* at 64 ("We hold that the standard originally suggested in *Tarasoff* is properly applicable to psychiatrists."). *Little* then erroneously divested the legislature of its constitutional authority to modify this judicially proclaimed public policy, and we therefore overrule it as well.

¶40 Although no foreseeability-based duty exists, we conclude a limited duty of mental health professionals to third parties exists in certain circumstances under statute and common law, as set forth below.

¶41 With respect to statutory sources for a duty, we note that the parties did not brief whether § 36-517.02 would be restored if this Court overturned *Little*. If so, that statute limits liability for mental health providers to third parties as described above. Section 36-517.02 not only limits such liability following *Hamman*, but it also embodies a statutory public policy basis for such liability. In fact, the liability codified in the statute is consistent with the scope of the common law liability.

¶42 Additionally, A.R.S. § 36-531(B) provides that if a mental health evaluation reveals a danger to the patient or others, the medical director of the agency conducting the evaluation, unless the patient seeks voluntary treatment, shall petition for court-ordered treatment, unless the county attorney does so.

¶43 Beyond statutory duties, a common law duty may be found in parts of the Restatement, which we "generally follow . . . unless it conflicts with Arizona law." *Quiroz*, 243 Ariz. at 570 ¶ 41. We noted earlier Restatement (Second) § 315, which recognizes a general duty to third parties based on a special relationship. *See Gipson*, 214 Ariz. at 145 ¶ 19. Restatement (Second) § 324A recognizes a duty to third parties under specified circumstances where a person "undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person." Restatement (Third) of Torts § 41(a) (Am. L. Inst. 2012) is more specific, providing that "[a]n actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship." *See Dinsmoor*, 251 Ariz. at 376 ¶ 24 (holding that a duty

arises only where a "known and tangible risk of harm" exists within the special relationship). Restatement (Third) § 41(b)(4) defines that applicable special relationship to include "a mental-health professional with patients." We do not speculate which, if any, of these Restatement sections apply to the facts here, and admonish that they must be read in a way that does not inject foreseeability into the duty framework and in concert with statutes addressing the subject matter.

¶44          Here, Crisis Prep complied with its statutory duty under § 36-531 by petitioning for involuntary treatment for Mother based on its evaluation. Following an evidentiary hearing, the court concluded that Mother was a danger to herself but not to others, and then ordered combined inpatient and outpatient treatment. Crisis Prep played no further role following that court order.

¶45          On the common law duty to warn, the basis for Avitia's petition for review in this Court was that the court of appeals wrongly failed to apply *Hamman* and *Little*. As we overturn those decisions here, no grounds for establishing a common law duty remain, and we therefore affirm the trial court's order granting summary judgment for Crisis Prep.

**CONCLUSION**

¶46          Crisis Prep seeks attorney fees pursuant to Arizona Rule of Civil Appellate Procedure 21, but it fails to state the basis for fees as required by Rule 21(a)(2). It seeks sanctions for a frivolous petition for review under Arizona Rule of Civil Appellate Procedure 25, but we conclude the appeal is not frivolous. Attorney fees and sanctions are therefore denied.

¶47          For the foregoing reasons, we vacate the court of appeals' opinion although we approve much of its reasoning, and we affirm the trial court's grant of summary judgment.

AVITIA v. CRISIS PREPARATION AND RECOVERY INC.
VICE CHIEF JUSTICE TIMMER, Concurring in Part, Dissenting in Part,
and Concurring in the Result

TIMMER, V.C.J., concurring in part, dissenting in part, and concurring in the result.

**¶48** We granted review of two questions: "1. Does the statutory duty to report child abuse or neglect under A.R.S. § 13-3620(A) encompass reporting a risk of future harm? 2. Does a common law duty to warn and protect foreseeable victims still exist after *Gipson v. Kasey*, 214 Ariz. 141 (2007), and its progeny?" The majority answers the first question "no," and I agree entirely.

**¶49** But although I agree with the ultimate disposition in this case, I disagree with how the majority answers the second question, including its decision to overrule *Hamman v. County of Maricopa*, 161 Ariz. 58 (1989), rather than reconcile it with *Gipson*. Also, I disagree with the majority's decision to overrule *Little v. All Phoenix South Community Mental Health Center, Inc.*, 186 Ariz. 97 (App. 1995), which held that A.R.S. § 36-517.02 violates Ariz. Const. art. 18, § 6, the anti-abrogation clause. The anti-abrogation issue was not raised or argued by either party. By jumping to resolve the issue, the majority has decided a significant and nuanced issue without the benefit of briefing from the parties or interested amici. In my view, we should leave the fate of *Little* and § 36-517.02 for a future case.

## A. The Holding In *Hamman v. County of Maricopa* Survives *Gipson v. Kasey.*

**¶50** The majority overrules *Hamman*, reasoning that because the Court "relied on foreseeability to establish a psychiatrist's duty to third parties," the decision cannot survive *Gipson*'s holding "that foreseeability is not a factor to be considered by courts when making determinations of duty." *Supra* ¶ 35; *Gipson*, 214 Ariz. at 144 ¶ 15. With respect, I conclude my colleagues misinterpret *Hamman* and the principal case it relied on, *Tarasoff v. Regents of University of California*, 551 P.2d 334 (Cal. 1976). Neither case based the duty determination on foreseeability. Consequently, in my view, *Gipson* and *Hamman* can peaceably coexist.

**¶51** To understand the interplay between *Gipson* and *Hamman*, I start with *Tarasoff*, which "has been widely accepted (and rarely rejected) by courts and legislatures . . . as a foundation for establishing duties of reasonable care" for mental health professionals to warn or otherwise protect potential victims from patients displaying violent intentions

15

AVITIA v. CRISIS PREPARATION AND RECOVERY INC.
VICE CHIEF JUSTICE TIMMER, Concurring in Part, Dissenting in Part,
and Concurring in the Result

towards others. Peter F. Lake, *Revisiting* Tarasoff, 58 Alb. L. Rev. 97, 98 (1994); *see also Hamman*, 161 Ariz. at 61 (describing *Tarasoff* as a "landmark" decision). There, graduate student Prosenjit Poddar confided to Dr. Moore, his university-employed psychologist, that he intended to kill Tatiana Tarasoff, who had spurned Poddar's romantic advances. *See People v. Poddar*, 518 P.2d 342, 344 (Cal. 1974); *Tarasoff*, 551 P.2d at 339. Although Dr. Moore reported the threat to campus police, who briefly detained Poddar, no one told Tatiana, her parents, or others likely to warn her of the threat. *See Tarasoff*, 551 P.3d at 339–40, 342. Poddar murdered Tatiana two months later. *Id.* at 339.

¶52        The relevant issue before the California Supreme Court in the subsequent negligence lawsuit filed by Tatiana's parents was whether the psychologist owed a duty of care to Tatiana. *Id.* at 342. Although California courts generally found a duty of care owed "to all persons who are foreseeably endangered" by a person's unreasonably dangerous conduct — a principle soundly rejected by *Gipson* — the *Tarasoff* court expressly refrained from considering foreseeability in determining whether a duty existed there. *See id.* at 342–43 (quoting *Rodriguez v. Bethlehem Steel Corp.*, 525 P.2d 669, 680 (Cal. 1974)). It explained that when the claim is for failing to control a dangerous person's conduct, or to warn others of such conduct, the common law traditionally imposes liability only when the defendant has a "special relationship" with the dangerous person or the victim. *Id.*

¶53        Relying on the Restatement (Second) of Torts ("Restatement 2d") § 315 (Am. L. Inst. 1965), the court concluded that the relationship between a psychologist and a patient constitutes a "special relationship" that supports imposing an affirmative duty of care on the psychologist for the benefit of third parties presently endangered by the patient. *See id.* at 343, 345–46; *see also Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 565 ¶ 14 ("[D]uty in Arizona is based on either recognized common law special relationships or relationships created by public policy."); *Gipson*, 214 Ariz. at 145 ¶ 19 (recognizing that the "special relationships" in Restatement 2d § 315 can give rise to a duty). It therefore left for a future case "whether foreseeability alone is sufficient to create a duty to exercise reasonabl[e] care to protect a potential victim of another's conduct." *Tarasoff*, 551 P.2d at 343; *see also* Restatement (Third) of Torts ("Restatement 3d") § 41 cmt. g (Am. L. Inst. 2012) ("The seminal case of [*Tarasoff*] recognized a special relationship between a psychotherapist and an outpatient, and a corresponding duty of

16

AVITIA v. CRISIS PREPARATION AND RECOVERY INC.
VICE CHIEF JUSTICE TIMMER, Concurring in Part, Dissenting in Part,
and Concurring in the Result

care on the part of the psychotherapist to third parties whom the patient might harm.").

**¶54**        *Tarasoff* separately addressed the scope of the psychologist's duty and in that context alone discussed foreseeability. *See id.* at 345. It concluded that "once a therapist does in fact determine, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." *Id.*; *see also Hamman*, 161 Ariz. at 63 (characterizing the *Tarasoff* quote as commenting on the "scope of a psychiatrist's duty"). Because Poddar identified Tatiana as his intended victim, the court concluded she was owed a duty as the foreseeable victim. *See Tarasoff*, 551 P.2d at 345.

**¶55**        *Tarasoff*'s use of the word "foreseeable" triggers *Gipson* warning bells. Indeed, the majority seizes on this language to find *Tarasoff*, and by extension *Hamman*, inconsistent with *Gipson*. *See supra* ¶ 33. But read in context, the California Supreme Court used the word in explaining the *conduct* required by the psychologist's duty—protecting the dangerous patient's intended victim—once the psychologist knows or should know the patient poses a serious danger of violence to that person. *See Martinez v. Woodmar IV Condos. Homeowners Ass'n*, 189 Ariz. 206, 211 (1997) ("[F]oreseeable danger [does] not dictate the existence of duty but only the nature and extent of the conduct necessary to fulfill the duty."), *cited with approval in Gipson*, 214 Ariz. at 144 ¶ 17; *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 355 (1985) (stating that "the existence of a duty is not to be confused with details of the standard of conduct"), *cited with approval in Gipson*, 214 Ariz. at 145 ¶ 21. The court could have substituted the words "intended victim" or "identified victim" for "foreseeable victim" without altering its meaning. *See Hamman*, 161 Ariz. at 62 (describing *Tarasoff* as imposing a duty on the psychologist to protect the patient's "intended victim"); *Brady v. Hopper*, 570 F. Supp. 1333, 1336 (D. Colo. 1983), *aff'd*, 751 F.2d 329 (10th Cir. 1984) (relying on *Tarasoff* and describing that case as imposing a duty to protect a dangerous patient's "intended victim"). Importantly, the existence of a "foreseeable victim" did not establish the basis for duty, which, as explained, was solely the special relationship between the psychologist and the patient. *Cf. Quiroz*, 243 Ariz. at 564 ¶ 8 (describing a duty based on foreseeability as existing when regardless of the existence of a special relationship, "a defendant realizes or should

17

AVITIA v. CRISIS PREPARATION AND RECOVERY INC.
VICE CHIEF JUSTICE TIMMER, Concurring in Part, Dissenting in Part,
and Concurring in the Result

realize that his conduct creates an unreasonable risk of harm to a 'foreseeable plaintiff'"). Thus, *Tarasoff* is not inconsistent with *Gipson*.

**¶56**        This brings me to *Hamman*. There, Mr. and Mrs. Hamman brought Mrs. Hamman's adult son, John, to a hospital emergency psychiatric center because he was exhibiting abnormal behavior. *Hamman*, 161 Ariz. at 59. This was nothing new. John had been hospitalized at the same facility about five months earlier, where he expressed jealousy of Mr. Hamman and had been administered a treatment plan to "'seclude and restrain' [him] from agitation, assaultive, or dangerous behavior." *Id.* Records from another hospitalization at a nearby facility related John's history of drug abuse and violent behavior. *See id.*

**¶57**        When the Hammans returned to the hospital with John, Mrs. Hamman told Dr. Suguitan, a psychiatrist who had previously admitted John to the hospital, that John had been engaging in violent behavior and carrying pictures of headless animals. *Id.* She reported that she and her husband were afraid of John, and she "begged" Dr. Suguitan to readmit him for treatment. *Id.* After interviewing John, Dr. Suguitan refused to admit him, and instead prescribed medication. *Id.* John did not tell Dr. Suguitan he wanted or intended to harm the Hammans. *See id.* at 60. Dr. Suguitan assured Mrs. Hamman that although John was schizophrenic and psychotic, he was "harmless," and the Hammans took him home. *Id.* at 59. Two days later, John attacked and seriously injured Mr. Hamman. *Id.* at 60.

**¶58**        The issue before this Court was whether Dr. Suguitan owed a duty to the Hammans absent communication of a specific threat by John. *See id.* at 61. The Court adopted *Tarasoff*'s holding that "the psychiatrist-patient relationship was sufficient under § 315 to support the imposition of an affirmative duty on the defendant for the benefit of third persons." *Id.* at 62, 64. The Court did not base this duty on the foreseeability that John would harm a third party. *See id.* But as the California Supreme Court did in *Tarasoff*, the *Hamman* Court discussed foreseeability in the context of defining the *scope* of the duty. *See id.* at 62–64. The Court ultimately rejected *Brady*'s narrower duty framework, which requires a mental health professional to protect or warn a third party only if the patient specifically threatens that person. *See id.* at 63. It held that after a psychiatrist determines or should have determined that "a patient poses a serious danger of violence to others," fulfilling that duty requires "exercis[ing]

18

AVITIA v. CRISIS PREPARATION AND RECOVERY INC.
VICE CHIEF JUSTICE TIMMER, Concurring in Part, Dissenting in Part,
and Concurring in the Result

reasonable care to protect the *foreseeable victim* of that danger." *Id.* at 64. Because sufficient facts showed that Dr. Suguitan knew or should have known that John posed a serious danger of violence specifically to the Hammans, the Court reversed the summary judgment entered for defendants. *See id.* at 64–65.

**¶59** The majority misinterprets *Hamman* by stating the Court chose "*Tarasoff*'s focus on foreseeability" to recognize duty rather than *Brady*'s narrower duty framework. *See supra* ¶¶ 28–29. This interpretation is incorrect on a few levels. First, as explained, *Tarasoff* did not base duty on foreseeability. Second, there was no "choice" made between *Tarasoff* and *Brady* to recognize a duty. *Brady*, like *Hamman*, relied on *Tarasoff* and its special relationship analysis to establish a mental health professional's duty. *See Brady*, 570 F. Supp. at 1336, 1338. Third, *Hamman* disagreed with *Brady* only on its definition of the scope of the duty, not the basis for the duty. While *Brady* requires the professional to protect or warn only a person specifically threatened by the patient, *id.* at 1338, *Hamman* more broadly requires the professional to protect or warn persons "subject to probable risk of the patient's violent conduct." *See Hamman*, 161 Ariz. at 64; *see also* Restatement 3d § 41 cmt. g ("The core holding of *Tarasoff* has been widely embraced, but courts often disagree about specifics. The primary points of contention are the content of the duty and to whom the duty is owed."). But both courts based duty on the special relationship between a mental health professional and a patient, and only described the beneficiary of the duty in identifying the scope of the duty. *See Hamman*, 161 Ariz. at 64; *Brady*, 570 F. Supp. at 1338.

**¶60** The majority responds to my points by disagreeing that *Hamman*'s holding rested on the scope of a mental health professional's duty rather than the existence of that duty. *See supra* ¶ 37. It characterizes *Hamman* as "us[ing] foreseeability precisely to recognize a duty to third parties that would otherwise not exist." *See id.* For the reasons I have explained, I disagree that *Hamman* rested the existence of duty on foreseeability. But more pointedly, *Hamman* itself stated it was deciding *the scope of the duty*. *See Hamman*, 161 Ariz. at 58 ("We granted the plaintiffs' petition for review to determine the nature and extent of a psychiatrist's duty to third parties injured by the psychiatrist's patient."). And tellingly, the pertinent analysis discussing the "foreseeable victim" appears under the heading, "Standard." *See id.* at 63–64.

AVITIA v. CRISIS PREPARATION AND RECOVERY INC.
VICE CHIEF JUSTICE TIMMER, Concurring in Part, Dissenting in Part,
and Concurring in the Result

¶61 For these reasons, I answer the second question posed to us in this case, "yes." A mental health professional has a common law "duty of reasonable care to third parties with regard to risks posed by the [patient] that arise within the scope of the relationship." Restatement 3d § 41; *see also Hamman*, 161 Ariz. at 64. Thus, if "a patient poses a serious danger of violence to others," the professional owes an affirmative duty to warn or otherwise protect those readily identifiable would-be victims. *See Hamman* 161 Ariz. at 64; Restatement 2d § 315; Restatement 3d § 41 (replacing Restatement 2d § 315). Whether the professional breached that duty by failing to warn or otherwise protect an identifiable victim, and whether the professional's conduct caused injury, depends on the facts of the case and is not part of the duty analysis. *See Gipson*, 214 Ariz. at 145 ¶ 21.

¶62 Turning to this case, Crisis Prep had a special relationship with Mother, which imposed on it an affirmative duty of reasonable care to third parties. Restatement 3d § 41; *Hamman*, 161 Ariz. at 64. If during the relationship Crisis Prep determined or should have determined that Mother posed a serious danger of violence to others, it was duty-bound to warn identifiable would-be victims of that danger or take other protective measures. *See Hamman*, 161 Ariz. at 64.

¶63 But the scope of Crisis Prep's duty did not extend to the twins. As we concluded in *Dinsmoor v. City of Phoenix*, 251 Ariz. 370 (2021) a court does not act contrary to *Gipson* by examining the case-specific facts to decide whether "an unreasonable risk of harm" arose from a special relationship to trigger a duty. *Id.* at 376–77 ¶ 27("Identifying the risk within the scope of the special relationship does not touch on concepts of breach or causation, so there is no danger of conflating duty with those elements."); *see also Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 272 ¶¶ 33–35 (2021) (rejecting an argument that a court could not consider case-specific facts to determine as a matter of law that defendant had not assumed a duty to plaintiff). As recited by the majority, *see supra* ¶ 23, no facts suggest that Crisis Prep knew or should have known that Mother presented a serious danger of violence to her children. Therefore, Crisis Prep had no duty to protect the twins, and for this reason alone, I would affirm the superior court's entry of summary judgment in favor of Crisis Prep.

AVITIA v. CRISIS PREPARATION AND RECOVERY INC.
VICE CHIEF JUSTICE TIMMER, Concurring in Part, Dissenting in Part,
and Concurring in the Result

### B. Whether *Little* Should Be Overruled And Whether § 36-517.02 Violates The Anti-Abrogation Clause Is Not At Issue In This Case.

¶64 I also disagree with the majority's decision to overrule *Little* and decide that § 36-517.02 does not violate art, 18, sec. 6 of the Arizona Constitution, the anti-abrogation clause. *See supra* ¶¶ 1, 36–38. The parties did not raise the anti-abrogation issue or ask for this relief, and we never asked for supplemental briefing. Although my colleagues asked the parties at oral argument about these issues, neither party was fairly prepared to answer. I would leave the anti-abrogation issue for a future case, which would permit the parties and interested amici to weigh in.

¶65 On the merits, I disagree that *Little* should be overruled solely because the Court overrules *Hamman*. *See supra* ¶ 38–39. As explained, I would not overrule *Hamman* because it is not inconsistent with *Gipson*. Thus, I would leave *Little* alone even if the issue had been raised.

¶66 I am also unpersuaded by the majority's reasons for finding that § 36-517.02 does not violate the anti-abrogation clause. I agree that the clause "only protects common law rights in existence at the time the Constitution was adopted or that are based on those rights," *see supra* ¶ 38, although I disagree with the majority's narrow view of that principle's application. *See Torres v. JAI Dining Servs. (Phx.), Inc.*, CV-22-0142-PR, slip op. at 38–56 ¶¶ 54–78 (Ariz. Oct. 16, 2023) (Timmer, V.C.J., dissenting); *Matthews v. Indus. Comm'n*, 254 Ariz. 157, 178–84 ¶¶ 55–73 (2022) (Timmer, V.C.J., concurring in part and dissenting in part). Regardless, the majority provides no analysis about whether a common law failure-to-warn action existed or was based on rights that existed at statehood. Briefing from parties on this issue would be illuminating, and we should await it in a future case.

### CONCLUSION

¶67 *Gipson* acknowledged that our case law has "created 'some confusion and lack of clarity . . . as to what extent, if any, foreseeability issues bear on the initial legal determination of duty.'" 214 Ariz. at 144 ¶ 15 (quoting *Riddle v. Ariz. Oncology Servs., Inc.*, 186 Ariz. 464, 466 n.3 (App. 1996)). *Hamman* may fall into this category by using "foreseeability" imprecisely. But *Hamman* is reconcilable with *Gipson* because the former

AVITIA v. CRISIS PREPARATION AND RECOVERY INC.
VICE CHIEF JUSTICE TIMMER, Concurring in Part, Dissenting in Part,
and Concurring in the Result

based duty on the special relationship between a mental health professional and a patient, not on concepts of foreseeability. For this reason, I would not overrule *Hamman*. Whether *Little* correctly held that § 36-517.02 violates the anti-abrogation clause by narrowing the scope of duty outlined in *Hamman* should be left for another case. Finally, because Crisis Prep's duty did not extend to the children in this case, I agree with my colleagues, albeit for different reasons, that we should affirm the superior court's summary judgment in Crisis Prep's favor.